**218 A.2d 461.**

JOHN SHAHINIAN *vs.* HAROLD V. LANGLOIS, *Warden.*

APRIL 13, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

POWERS, J. This petition for a writ of habeas corpus is predicated on the petitioner's claim that he is being unlawfully deprived of his liberty by the respondent warden of the adult correctional institutions. We issued the writ and in his return the warden admitted having custody of the petitioner, but denied the illegality thereof, based on the records accompanying his return.

It appears from the petition and the records that on October 26, 1955, petitioner was arraigned before a superior court justice on two companion indictments for forgery and a criminal appeal from a district court conviction of passing a worthless check. He pleaded nolo contendere to all three charges and was sentenced to serve a five-year term on indictment No. 27,546 and, consecutive to that, a three-month term on the criminal appeal. On the recommendation of the attorney general said justice deferred sentence on indictment No. 27,547, petitioner having executed a deferred sentence agreement[1] as provided in now G. L. 1956, §12-19-19.[2]

---

[1]Agreement under which sentence is deferred, October 26, 1955: "It Is Hereby Agreed that sentence may be deferred on the above entitled indictment,—upon payment of all costs, during the good behavior of the defendant, and so long as the Attorney General is satisfied that the defendant has broken none of the criminal laws of this State, since the date of this agreement."

[2]§12-19-19. "Whenever any prisoner shall be arraigned before the superior court, and shall plead guilty, or refuse to contend with the state, he may be at any time sentenced by the court; provided, that if at any time the court formally defers sentencing the defendant, and thereupon a written

It further appears that petitioner was paroled on February 11, 1959 at which time, he agrees, the five-year period provided for in the statute began to run. Thereafter, on April 29, 1960 petitioner, using the name "John Marieo," was sentenced to serve thirty days on a charge of stealing, to which he pleaded guilty before the municipal court in Chillicothe, Ohio. Then followed a series of convictions after trial or on petitioner's pleas of nolo contendere on divers offenses in the states of New York and Massachusetts.[3] Significantly, he served a three-month sentence, less

agreement concerning said deferring of sentence is entered into between the attorney-general and the prisoner, and filed with the clerk of said court, thereafter the court may only impose sentence within five (5) years from and after the date of said written agreement, unless during said period, such prisoner shall be sentenced to imprisonment in this or in any other state, in which event the court may impose sentence at any time within five (5) years from and after the termination of such sentence of imprisonment, or unless at the time such sentence is formally deferred such prisoner shall be serving a term of imprisonment under sentence previously imposed in another case, in which event the court may impose sentence at any time within five (5) years from and after the date on which such prisoner is released from prison either on parole or at the termination of such sentence of imprisonment, whichever first occurs."

[3]May 13, 1960 released from jail and balance of Ohio sentence suspended so that petitioner would be transported to New York to answer criminal charges placed against him, he having waived extradition.

September 20, 1960, petitioner was convicted of conspiracy, burglary in third degree and grand larceny in the first degree after a jury trial in Dutchess County, New York.

October 29, 1962 appealed above—new trial ordered. On remand petitioner pleaded guilty and received a suspended sentence.

May 16, 1963 petitioner charged in Massachusetts with larceny of property exceeding $100, to wit, 53 phonograph records and two men's suits.

June 6, 1963 pleaded guilty and sentenced to one year. Appealed sentence and on June 20, 1963 was sentenced to three months in house of correction in Billerica and fined $300.

April 29, 1964 in municipal court for city of Boston charge of larceny exceeding $100, to wit, five men's suits each of the value of $28, all of the value of $140 and the property of Jordan Marsh Company. Petitioner was found guilty and sentenced to six months at the house of correction on Deer Island in the city of Boston. Appealed and still pending.

credits for good behavior, in the house of correction at Billerica, Massachusetts, from June 20 to September 10, 1963.

On March 24, 1965 he was arraigned before a superior court justice for violation of the terms of the deferred sentence agreement entered into on October 26, 1955 in connection with his plea of nolo contendere in indictment No. 27,547. He was ordered held without bail and committed to the adult correctional institutions pending receipt of a presentence report. On April 5, 1965 he was arraigned before the superior court for sentence, at which time he was represented by two attorneys. The transcripts of those proceedings are a part of the record accompanying the respondent's return.

It appears therefrom that an assistant attorney general related to the court the record of petitioner's convictions and incarcerations since his release from the adult correctional institutions on February 11, 1959, establishing that there was no five-year period within which petitioner was not imprisoned, and moved for imposition of sentence for violation of the deferred sentence agreement in indictment No. 27,547. The motion was predicated on petitioner's conduct as reflected by the convictions in other states and his association with a known criminal under suspicious circumstances.[4]

---

[4]The presentence report, considered by the court, contains a voluminous account of petitioner's association with one Robert Charbonneau, a known criminal and wanted by the Providence police. On one occasion, January 22, 1965, Charbonneau was picked up while standing in front of the Carriage Trade while Shahinian was inside. The Carriage Trade shop was broken into between January 30 and February 1, 1965 and Charbonneau was a prime suspect.

On another occasion Charbonneau was apprehended by the Grafton police for larceny. He had been driven to the scene by Shahinian and when he was apprehended Shahinian departed in an auto R. I. registration GA817 registered to the subject's girl friend.

Counsel for petitioner made representations to the court that a hearing relative to some of the allegations made by the attorney general and those contained in the presentence report on the issue of improper association would establish facts as distinguished from hearsay and that the facts thus established would be favorable to petitioner. Urging such a hearing, they outlined what they expected a hearing would disclose.

The superior court justice, indicating that such a hearing would be controlled by credibility and commenting on the record of convictions as well as the presentence report, refused counsel's request and sentenced petitioner to a term of three years on his October 26, 1955 plea of nolo to indictment No. 27,547. It is from this sentence that petitioner seeks relief in these proceedings.

Basically, it is his position that the superior court justice was without jurisdiction to impose sentence and in support thereof he makes several contentions, invoking throughout the constitutional guarantees set forth in articles V, VI, VIII and XIV of the amendments to the United States constitution and art. I, §§8, 10 and 13, of the constitution of this state. However, because petitioner has misconceived the import of both the agreement executed with the attorney general and the statute pursuant to which the agreement was executed, the constitutional provisions on which he relies are of no assistance to him on the facts as they appear in the record.

It is petitioner's first contention that the provision of the agreement into which he entered wth the attorney general, namely, "and so long as the Attorney General is satisfied that the defendant has broken none of the criminal laws of this State, since the date of this agreement," was not within the authority conferred upon the attorney general by G. L. 1956, §12-19-19. That it was not, he argues, flows from the proposition that a grant of such authority by the legislature would be an invalid delegation of the judicial

power. This argument, however, presupposes that, in arraigning petitioner before a justice of the superior court for violation of the deferred sentence agreement, the attorney general purports to make a judicial determination that petitioner had in fact violated a criminal law of the state.

Such is not the case. It is a well-settled principle of law that one who has been convicted of a crime, or pleaded guilty or nolo contendere to a criminal charge, is entitled to have sentence pronounced within a reasonable time, but he may voluntarily waive such right. *Orabona* v. *Linscott,* 49 R. I. 443. That case was decided on a practice which then prevailed whereby, on the recommendation of the attorney general as the state's chief law enforcement officer, justices of the superior court were deferring the imposition of sentence, so that the accused would be at liberty on a condition of good conduct. The practice was comparable to that in other states. See *Commonwealth* v. *Dowdican's Bail,* 115 Mass. 133; *Murphy* v. *State,* 171 Ark. 620; *People ex rel. Forsyth* v. *Court of Sessions,* 141 N. Y. 288; *Commonwealth ex rel. Wilhelm* v. *Morgan,* 278 Pa. 395; *Ex Parte Samber,* 13 N.J. Super. 410; and *Couture* v. *Brown,* 82 N. H. 459.

There was, however, no limitation as to the time within which sentence might be imposed. Thus a person at liberty, under sufferance as it were, could, theoretically at least, be sentenced by the court on the original offense after many years of good conduct on the representation of the attorney general that there had been a violation of the good-conduct condition on which the deferring of sentence was predicated. Even then, however, it was for the court to pass upon the actuality and/or gravity of the circumstances which motivated the attorney general.

In 1927, the general assembly taking cognizance of the situation enacted the basic provisions of what is now G. L. 1956, §12-19-19.[5] Its purpose was and is to limit the time

[5]See footnote 2.

within which sentence could be imposed if, during the effective period of limitation, the accused demonstrated his right to liberty. It placed within his control the opportunity for rehabilitation. See *Powers* v. *Langlois,* 90 R. I. 45.

Thus the statute in question does not vest the attorney general with judicial power. Rather, believing an accused to be a good risk and having executed an agreement pursuant to the statute, the attorney general in recommending that the imposition of sentence be deferred assumes the duty, in the interest of society, to make known to the court such circumstances as may subsequently come to his attention which now cause him to believe that the interest of society would be best served by the imposition of sentence for the offense on which sentence was deferred. These circumstances may consist of imprisonment in this state or elsewhere during the statutory five-year period which unquestionably establishes a failure of continuing good behavior, or association with a known criminal under suspicious circumstances, *Broccoli* v. *Kindelan,* 80 R. I. 436, or evidence of such behavior as on hearing by a superior court justice would lead the court to conclude that the doubts of the attorney general were well founded, such conclusion not being arbitrary. *Broccoli* v. *Kindelan, supra.*

In moving for sentence, however, on a presentation of any of these circumstances, the attorney general is not exercising a judicial function. He is simply conforming to the duty which he assumed in entering into a deferred sentence agreement. We have heretofore held that a legislative enactment vesting the attorney general with authority to move for sentence does not constitute a delegation of the judicial power. See *State* v. *Fay,* 65 R. I. 304.

The petitioner's next contention is that the record discloses that he did not violate the terms of his agreement even if the latter were not an unconstitutional exercise of the judicial power. He argues, as we understand him, that within the period during which the agreement was effective,

he has not violated any of the laws of this state and appears to consider this as controlling by reason of the last proviso in the agreement which he signed. The lack of merit in this argument is readily apparent from the discussion relating to his first contention.

If, however, we were to determine, as we do, that his first two contentions are without validity, petitioner further contends that the jurisdiction of the superior court to impose sentence terminated on February 11, 1964, this being five years from the date on which he was released from the adult correctional institutions. It was necessary, he argues, for him to have been arraigned after his return to Rhode Island following his release from prison in New York on December 7, 1962, and on such arraignment that sentence be again deferred for the Rhode Island court to retain its jurisdiction. In making this argument, petitioner completely misreads that provision of G. L. 1956, §12 19-19, which is as follows: "* * * unless during said period, such prisoner shall be sentenced to imprisonment in this or in any other state, in which event the court may impose sentence at any time within five (5) years from and after the termination of such sentence of imprisonment * * *."

In *Giroux* v. *Superior Court,* 86 R. I. 48, cited with approval in *Almeida* v. *Langlois,* 97 R. I. 325, 197 A.2d 498, this court impliedly declared, and we now categorically hold, that the quoted language results in an automatic reinstatement of a five-year period of conditional liberty, commencing with a release from a prison sentence served within the original five-year period. Such a holding is not, as petitioner argues, an unconstitutional exercise of the legislative power. Rather, it results from petitioner's agreement to waive his right to be sentenced within a reasonable time. The provisions of the statute on which the agreement is predicated are as much a part of the agreement as is any condition expressed therein. If the protest be made that too much is demanded, the short answer is that much is given

and it was for petitioner to decide before entering into an agreement whether to choose liberty so conditioned or submit to sentence when arraigned on indictment No. 27,547, there being no question of guilt.

Having made his decision, petitioner waived those rights for which he now contends. He makes no contention that this waiver was not a voluntary relinquishment of known rights intelligently made and indeed it would be difficult for him to do so.

Notwithstanding that all of his previously-considered contentions are without merit, petitioner further contends that he was denied due process and equal protection of the law when sentence was imposed without the benefit of a hearing at which he could have adduced evidence challenging the accuracy of the information on which the superior court justice relied. In advancing this argument, petitioner refers our attention to *Townsend* v. *Burke* (1948), 334 U. S. 736.[6] That case is clearly distinguishable on its facts and is of no assistance to him.

The record before us discloses that on his arraignment, petitioner was represented by two attorneys who argued in detail and at length that some of the information contained in the presentence report was false or open to interpretations other than those placed upon it by the probation officer who prepared it after an investigation ordered by the court. The superior court justice noted that the nature of the evidence counsel would adduce had been clearly established by them. He indicated that it lacked credibility but expressly stated that he was imposing sentence solely on

---

[6] Townsend pleaded guilty to two charges of burglary and two charges of robbery in a Pennsylvania court and was sentenced thereon. He was not represented by counsel and it is apparent from the record that the sentencing justice was influenced by three alleged convictions which in fact were for offenses in which the charge had either been dismissed or Townsend found to be not guilty. The court held that sentence based on a foundation so extensively false constituted a denial of due process.

the grounds that petitioner had violated the good-behavior proviso of the deferred-sentence agreement as evidenced by his convictions out of state and association with a known criminal under suspicious circumstances. The trial justice's refusal to grant counsel's request, they not contesting the authenticity of the records relating to petitioner's convictions in Ohio, New York and Massachusetts, under such circumstances here present was not an abuse of discretion.

Nor assuming without deciding that unreasonable delay by the attorney general in moving for sentence may constitute a lack of due process or equal protection as petitioner further contends, the record discloses that there was no unreasonable delay in the instant cause.

The petitioner was arraigned for violation of his agreement March 24, 1965 and committed without bail pending receipt of a presentence report. As heretofore noted he had been released on September 10, 1963 after serving a three-month sentence in Massachusetts. Between that day and March 24, 1965 he was again in trouble in Massachusetts. On April 29, 1964 he was convicted after trial in the Boston municipal court on a charge of having stolen men's clothing from the Jordan Marsh Company. He appealed to the Massachusetts superior court, Suffolk county, from a six-month sentence and this appeal was pending when petitioner received the sentence he is currently serving. The record appears to establish as a fact that petitioner spent much of his time in Massachusetts.

However, it was in connection with petitioner's association with at least one known and wanted criminal who was suspected of involvement in a $50,000 break in a Woonsocket store between January 30 and February 1, 1965 which motivated the attorney general in arraigning petitioner and moving for sentence. Clearly, if relevant, the attorney general cannot be said to have delayed unreasonably.

Lastly, petitioner notes that he was required by the at-

torney general to report regularly to a probation officer, with which order it appears he complied. He argues, however, that the record will disclose that he was not placed on probation by the superior court justice who deferred sentencing on October 26, 1955. Thus, he apparently contends, that the order of the attorney general constituted an unwarranted assumption of judicial power. Just how this would aid him, even if correct, in these proceedings we are at a loss to understand. However, his basic contention is unsound. He bases it on the proposition that probation is a sentence, which it has been universally held is not the case. *Commonwealth ex rel. Paige* v. *Smith,* 130 Pa. Super. 536; *Adamo* v. *McCorkle,* 26 N. J. Super. 562; *People ex rel. Schurman* v. *Ashworth,* 67 N. Y. S.2d 179; and *People ex rel. Lehman* v. *Hunt,* 255 App. Div. 931.

The petition for habeas corpus is denied and dismissed, the writ heretofore issued is quashed, and the petitioner is ordered remanded to the custody of the respondent warden.

*John Shahinian pro se,* petitioner.

*J. Joseph Nugent,* Attorney General, *Corrine P. Grande,* Special Counsel, for respondent.