409 A.2d 1216.

STATE *vs.* LOUIS R. CIARLO.

JANUARY 10, 1980.

PRESENT: Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J. The defendant, Louis R. Ciarlo, was adjudged in violation of his engagement to be of good behavior as a condition of a previously imposed deferred sentence. Pursuant to the violation of adjudication, the trial justice imposed sentence; and defendant is before us now on appeal from the judgment of conviction and imposition of sentence.

On September 10, 1975, defendant Ciarlo appeared before

a justice of the Superior Court for arraignment on kidnapping and robbery charges which stemmed from an indictment of the grand jury. Although he initially pleaded not guilty, defendant subsequently retracted that plea, and eight days later, he was arraigned again and entered the plea of nolo contendere before another justice of the court. On November 10, 1975, defendant appeared for sentencing before that same justice, entered into a deferred sentence agreement[1] on count 1, kidnapping, and sentence was duly deferred. With respect to counts 2, 3, and 4, which charged defendant with robbery, the trial justice sentenced defendant to incarceration at the Adult Correctional Institutions (ACI) for a term of ten years. Of these ten years, defendant was ordered to serve the first four years, and the remaining six years were suspended. Sentence on each count was to run concurrently, with probation for six years to commence upon his release from prison.

At one point during defendant's period of incarceration at the ACI, a number of Maximum Security guards searched defendant's cell in response to an order from their captain, who, several days earlier, had observed defendant acting in a strange manner (apparently under the influence of some drug). The guards discovered an assortment of forbidden items, including pipes, clubs, blades, and syringes and cookers adapted for subcutaneous injection of drugs, in a false bottom of a cabinet located in his cell. The defendant was arrested, and an information was filed on March 15, 1978, charging him, inter alia, with possession of a hypodermic needle and syringe, possession of a bludgeon,

---

[1]The agreement, dated November 10, 1975, and signed both by then Assistant General Albert E. DeRobbio and defendant Ciarlo, reads as follows:

"*Agreement under which Sentence is deferred*
It is hereby agreed that sentence may be deferred on the above entitled indictment - complaint, - upon payment of all costs, during the good behavior of the defendant, and so long as the Attorney General is satisfied that the defendant has violated none of the criminal laws of this state or any other state, since the date of this agreement."

and possession of a controlled substance.[2]

As a result of the items of contraband discovered in defendant's cell, the attorney general's department presented him on April 28, 1978, before the Superior Court as an alleged violator of the November 10, 1975 deferred sentence agreement. Defense counsel moved, inter alia, to dismiss the hearing on the ground that the Superior Court lacked proper jurisdiction over the matter, since, in defendant's view, the five-year period set forth in G.L. 1956 (1969 Reenactment) §12-19-19[3] would commence to run upon his release from prison; hence the court lacked jurisdiction to violate defendant on the deferred sentence while he was incarcerated. The trial justice's denial of that motion forms the basis of the present appeal.

On May 26, 1978, defendant renewed his motion, and, again, it was denied. He was then tried as a violator of the deferred sentence agreement; on June 1, 1978, he was declared a violator of the deferred sentence agreement entered

---

[2]The trial court later granted the state's July 19, 1978 motion to amend counts 3 through 8 to merge with count 2 and sentenced defendant on that date to the ACI for one year, which sentence was suspended, and to one year's probation on the sentence to run concurrent with those previously imposed on the indictment, with probation to commence upon defendant's release from the term he was serving.

[3]General Laws 1956 (1969 Reenactment) §12-19-19 provides:

"Sentencing on plea of guilty or nolo contendere - Deferment of sentence. Whenever any prisoner shall be arraigned before the superior court, and shall plead guilty, or refuse to contend with the state, he may be at any time sentenced by the court; provided, that if at any time the court formally defers sentencing the defendant, and thereupon a written agreement concerning said deferring of sentence is entered into between the attorney-general and the prisoner, and filed with the clerk of said court, thereafter the court may only impose sentence within five (5) years from and after the date of said written agreement, unless during said period, such prisoner shall be sentenced to imprisonment in this or in any other state, in which event the court may impose sentence at any time within five (5) years from and after the termination of such sentence of imprisonment, or unless at the time such sentence is formally deferred such prisoner shall be serving a term of imprisonment under sentence previously imposed in another case, in which event the court may impose sentence at any time within five ( years from and after the date on which such prisoner is released from prison either on parole or at the termination of such sentence of imprisonment, whichever first occurs."

into on count 1 of the indictment. On July 18, 1978, the court sentenced defendant to three years at the ACI.

The sole issue on this appeal is whether the Superior Court had jurisdiction, by virtue of G.L. 1956 (1969 Reenactment) §12-19-19, to try defendant as an alleged violator of a deferred sentence agreement for offenses committed during his incarceration at the ACI, when that agreement was entered into on one count of the same indictment that had resulted in the sentence he was serving at the time of the alleged violation.

The defendant and the state agree that the deferred sentence agreement is a contract between the two parties whose signatures appear on the document. The pertinent language on the agreement specifies that sentence on the relevant indictment or complaint may be deferred not only so long as the defendant remains of good behavior, but further, so long as the Attorney General is satisfied that the defendant has not violated the criminal laws of any state since the date of the agreement. The contract, then, became effective at the very moment of its execution. Thus "the effect of the agreement was not to suspend the operation of a sentence, but to defer, with defendant's consent, the imposition of any sentence." *Orabona* v. *Linscott*, 49 R.I. 443, 446, 144 A. 52, 53 (1928). By signing such an agreement, defendant became bound by each and every statutory provision relating thereto. *Powers* v. *Langlois*, 90 R.I. 45, 153 A.2d 535 (1959), *cert. denied*, 362 U.S. 905, 80 S. Ct. 615, 4 L. Ed. 2d 556 (1960).

The defendant and the state disagree, however, with respect to the construction of the deferment of sentence statute. We turn initially to the legislative intent. The intent of the Legislature prescribes the policy underlying the statute, and that intent is to be found in the statute's words when they are free from ambiguity and express a clear and sensible meaning; to that effect we have observed that the plain and ordinary language of the statute declares its own meaning. *Little* v. *Conflict of Interest Commission of Rhode Island*, 121 R.I. 232, 397 A.2d 884 (1979); *State* v. *Patriarca*, 71 R.I. 151, 43 A.2d 54 (1945).

Unquestionably, §12-19-19, subject to certain exceptions, provides for a time limitation of five years from the date of the execution of the deferred sentence agreement, within which time the Superior Court may impose a sentence for its violation. But by virtue of his deferred sentence agreement with the state, defendant contends that he had thereby guaranteed only five years of good behavior and that the five-year period would commence, in effect, upon his release from the ACI.

We have determined that the case of *Giroux v. Superior Court*, 86 R.I. 48, 133 A.2d 636 (1957), *cert. denied*, 355 U.S. 919, 78 S. Ct. 349, 2 L. Ed. 2d 278 (1958), is controlling.[4] In *Giroux*, the defendant was serving a term of imprisonment under a sentence previously imposed for a prior offense. During that period of incarceration he was brought before the Superior Court on the representation of the Attorney General that he had violated the terms of a deferred sentence agreement by throwing a pail of hot water at one of his guards. The court adjudged him in violation of his engagement to be of good behavior as a condition of the deferred sentence and imposed sentence.

We considered in detail the legislative history of §12-19-19 and determined that the provisions contained in the deferred sentence agreement statute did not prohibit the court from imposing sentence before a defendant's release from the sentence of incarceration. The provisions do not prescribe a prohibition at all but merely a limitation of the time within which the Superior Court may sentence a defendant for a violation after either event mentioned therein has occurred. The statute fixed a definite starting point from which the

---

[4]In *Giroux* v. *Superior Court*, 86 R.I. 48, 133 A.2d 636 (1957), *cert. denied*, 355 U.S. 919, 78 S. Ct. 349, 2 L. Ed. 2d 278 (1958), the defendant relied upon that portion of §12-19-19 that relates to "a term of imprisonment under sentence previously imposed in another case" while defendant, in the instant case, bases his appeal on the part that reads "unless during said period such prisoner shall be sentenced to imprisonment in this or in any other state." Our language and holding in *Giroux*, however, are applicable equally to either circumstance.

time limitation on the Superior Court's power to sentence would commence.

"The act did not alter the court's power to sentence at any time *before* the expiration of such limitation but it did expressly deprive the court of the right to exercise the power to sentence *after* the period of limitation had expired.

"To construe the act as prohibiting the court from sentencing while the offender remained in prison if cause therefor arose, would be to pervert the true intent of the legislature and tie the hands of the court without serving any useful purpose." (Emphasis in original.) *Id.* at 51-52, 133 A.2d at 638.

At oral argument, defense counsel asked us to overrule our holding in *Giroux,* although the case has been good law in this jurisdiction for twenty-two years, and the General Assembly, in all that time, has never changed the wording of §12-19-19 in light of our discussion of the statute's legislative history and intent. Defense counsel conceded that his request would lead to the incongruous situation in which a prisoner, while confined to the ACI and subject to the terms of a written deferred sentence agreement, need not be of good behavior during his period of incarceration but need only perform his part of the bargain upon his release.

The purpose of the time limitation during which sentence may be imposed following execution of the deferred sentence agreement is to assure a defendant that he will not be subject to the threat of imprisonment for his offense for the rest of his life, but that the running of the five-year term may be tolled or extended in certain enumerated situations. *State* v. *Taylor,* 111 R.I. 653, 306 A.2d 173 (1973). A clear and straightforward reading of the statute in light of *Giroux* shows that the various events that will extend the period during which sentence may be imposed do not give rise to an inhibition against the court's imposition of a sentence during the period of incarceration. This result would obtain whether one was confined at the time sentence was formally deferred

because of a sentence previously imposed in another case, as in *State* v. *Carmello*, 83 R.I. 303, 116 A.2d 464 (1955), or whether one was confined at a later date because of an intervening conviction and sentence, as in *Almeida* v. *Langlois*, 97 R.I. 325, 197 A.2d 498 (1964), or under circumstances identical to those of the case at bar, as in *Giroux*.

The defendant asserts that the recent case of *State* v. *Johnson*, 115 R.I. 550, 349 A.2d 609 (1976), overrules our holding in *Giroux*. To support his position, defendant relies upon the language in *Johnson* to the effect

"that the 5-year period will not commence until the termination of an intervening sentence or, in the case of a previously imposed sentence, until the offender is released from prison on parole or at the termination of his sentence. *Shahinian* v. *Langlois*, 100 R.I. 631, 638, 218 A.2d 461, 465 (1966); *Almeida* v. *Langlois*, 97 R.I. 325, 327, 197 A.2d 498, 499 (1964); *Giroux* v. *Superior Court*, 86 R.I. 48, 133 A.2d 636 (1957), *cert. denied*, 355 U.S. 919, 78 S. Ct. 349, 2 L. Ed. 2d 278 (1958); *State* v. *Carmello*, 83 R.I. 303, 116 A.2d 464 (1955)." 115 R.I. at 552-53, 349 A.2d at 611.

The defendant, however, misconstrues both the issue and the holding of the *Johnson* case. There, the defendant had already been released from prison, after having served time on an intervening sentence, and he argued that the period of time within which the Superior Court could properly impose sentence had already expired prior to the date that he was presented before it as a violator. Our concern was whether the court could sentence a defendant for an offense that occurred more than five years after the execution of the deferred sentence agreement. As a consequence, *Johnson* is a determination of an entirely different point. Specifically, we simply reiterated our position that an intervening or a previously imposed sentence may extend the statutory five-year period of limitation. *See Shahinian* v. *Langlois*, 100 R.I. 631, 219 A.2d 461 (1966). *Johnson* does not stand for the proposition that a deferred sentence agreement does not

become operative until the expiration of an intervening or previously imposed sentence. As noted earlier, that agreement takes effect at the moment of its execution. Thus an intervening or previously imposed prison sentence may extend the five-year period of limitation, but the agreement, itself, commences upon execution and not at some later date. No intervening or previously imposed sentence will postpone the effective commencement of that agreement.

In light of our decisions in *Giroux* and *Johnson, supra,* we are of the opinion that the Superior Court has jurisdiction to impose sentence for the violation of a deferred sentence agreement from the time of the formal deferment of the sentence until five years after a defendant's release from a sentence he is then serving, or until the expiration of the five years after any intervening sentence within that same period, or until five years after the execution of the agreement, where no previously imposed or intervening sentence operates to extend the limitation period. Thus we hold that the trial justice's construction and application of §12-19-19 was correct.

For the reasons above indicated, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court.

Mr. Chief Justice Bevilacqua did not participate.

*Dennis J. Roberts II,* Attorney General, *Stephen R. Famiglietti,* Special Assistant Attorney General, for plaintiff.

*John J. Bevilacqua, Thomas A. Tarro III,* for defendant.