STATE

v.

James BRIGGS.

State

v.

Anna M. Mathias.

Nos. 2005–62–C.A., 2006–13–C.A.

Supreme Court of Rhode Island.

Nov. 16, 2007.

Aaron Weisman, Providence, for Plaintiff State.

Marie Roebuck, Providence, for Defendants Briggs and Mathias.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

What should the final result be when a criminal defendant successfully completes his or her obligations under a deferred sentence agreement pursuant to G.L. 1956

§ 12–19–19? Both the defendants here, James Briggs and Anna M. Mathias, successfully completed deferred sentence agreements and then moved in the Superior Court for orders expunging all indications of their respective offenses from their criminal records. They timely appealed[1] after a hearing justice of that court denied their motions, reasoning that the defendants were not entitled to an automatic erasure of their records, that both came within the ambit of the expungement statute, G.L. 1956 § 12–1.3–2,[2] and that neither qualified for expungement under the requirements of that statute. We affirm.

### Facts and Procedural History

On June 26, 1993, James Briggs was charged with one count of second-degree robbery in violation of G.L. 1956 § 11–39–1. He pled *nolo contendere*[3] to the offense and received a five-year deferred sentence on January 20, 1995. After successfully completing the terms of the deferred sentence agreement, defendant Briggs filed a motion, on September 3, 2003, to expunge the sentence from his record.

On September 22, 1994, Anna M. Mathias was charged with one count of possession of a controlled substance in violation of G.L. 1956 § 21–28–4.01. She pled *nolo contendere* to the charge and received a five-year deferred sentence on March 4, 1996.[4] After successfully completing the terms of the deferred sentence agreement, defendant Mathias filed a motion, on September 18, 2003, to expunge the sentence from her record. Since the initial possession charge, however, defendant Mathias has been charged with reckless driving, two counts of simple assault, driving on a suspended license, and leaving the scene of an accident. After pleading *nolo contendere* to each charge, she received one-year probation for the reckless driving and assault charges, a fine for the suspended license charge, and one-year probation and a fine for the leaving the scene of the accident charge. Both defendants argued before the Superior Court that because they never were actually sentenced, they had not been convicted of any offense and,

1. In an order on June 1, 2006, we directed the parties to brief and be prepared to discuss at oral argument whether the hearing justice's order on May 6, 2004 was appealable. Most regrettably, neither party complied with our instructions. The question of appealability *vel non* of the subject order is close and intricate. In view of the absence of briefing as to that issue, however, we shall assume *without deciding* that the order is appealable, and we will proceed to address the merits. Also, in the order on June 1, 2006, we granted the defendants' motion to consolidate the appeals for purposes of the expungement issue only.

2. General Laws 1956 § 12–1.3–2 says in relevant part:

 "(a) Any person who is a first offender may file a motion for the expungement of all records and records of conviction for a felony or misdemeanor by filing a motion in the court in which the conviction took place, provided that no person who has been convicted of a crime of violence shall have his or her records and records of conviction expunged.

 "* * *

 "(c) Subject to subsection (a) of this section, a person may file a motion for the expungement of records relating to a felony conviction after ten (10) years from the date of the completion of his or her sentence."

3. A *nolo contendere* plea is accepted by a trial justice only if there is a factual basis for such a plea. Super.R.Crim.P. 11. To this end, the trial justice is required to examine the defendant in open court to determine whether the plea "is made voluntarily with understanding of the nature of the charge and the consequences of the plea," and also to determine "that there is a factual basis for the plea." *Id.*

4. It should be noted that neither of defendants' deferred sentence agreements set forth what would occur upon completion.

therefore, all records involving their arrest and plea should be erased from their records.

On May 4, 2004, a hearing justice of the Superior Court denied both defendants' motions, finding that the deferred sentences were not "automatically expunged" upon completion, but rather were subject to the requirements of the expungement statutes, §§ 12–1.3–2 and 12–1.3–3. The hearing justice, however, found that neither defendant satisfied the statutory criteria for expungement because defendant Briggs had committed a violent crime and defendant Mathias had pled *nolo contendere* to charges of simple assault within ten years prior to her motion.[5]

On appeal to this Court, defendants argue that the hearing justice erred when she based her decision on the expungement statute. Rather, defendants argue, this Court should hold that upon completion of the deferred sentence agreements, because sentences never were imposed, the Superior Court should have exercised its inherent authority to dismiss the charges and subsequently expunge defendants' records. The state counters that the Superior Court has no inherent authority to expunge the record of defendants' completed deferred sentences. The state further contends that although the hearing justice correctly focused on the expungement statute, § 12–1.3–2, neither defendant satisfies the requisite criteria.

## Standard of Review

 "Questions of law and statutory interpretation * * * are reviewed *de novo* by this Court." *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I. 2001). In carrying out our duty as the final arbiter on questions of statutory construction, "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996). However, "[t]his [C]ourt will not construe a statute to reach an absurd result." *Kaya v. Partington,* 681 A.2d 256, 261 (R.I.1996). The Legislature is presumed to know the state of existing relevant law when it enacts a statute. *Defenders of Animals, Inc. v. Department of Environmental Management,* 553 A.2d 541, 543 (R.I.1989). But, when ambiguity renders construction of a statute necessary, it is incumbent upon us "to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987). Legislative enactments will "be construed to alter the common law only to the extent that the [L]egislature has made that purpose clear." *Knowles v. Ponton,* 96 R.I. 156, 159, 190 A.2d 4, 6 (1963).

## Analysis

The parties agree that the critical issue on appeal is whether defendants are entitled to the removal of successfully completed deferred sentences from their records. The parties disagree, however, about the legal framework under which this issue should be evaluated—defendants contend that the Court should base its decision on the Superior Court's inherent authority to expunge, and the state maintains that the requirements of §§ 12–1.3–2 and 12–1.3–3 control.

---

5. The hearing justice characterized both defendants as first offenders. She also found that defendants may have filed their motions prematurely, but she did not rule on this issue.

■ The state correctly points out that defendants failed to raise the inherent authority argument before the trial court. "It is an established rule in Rhode Island that this Court will not review issues that are raised for the first time on appeal." *Union Station Associates v. Rossi*, 862 A.2d 185, 192 (R.I.2004). Thus, our well-established raise-or-waive rule precludes this Court from addressing arguments raised on appeal that were not first presented to the trial justice for review. *State v. Mohapatra*, 880 A.2d 802, 810 (R.I.2005). It is clear from our review of the record that defendants never asserted to the Superior Court that it had inherent authority to expunge their records; rather, defendants argued before that tribunal that their records should be "automatically expunged" because defendants never were "convicted" of their respective crimes.

■ However, it is our opinion that even if the inherent authority argument had been raised below, defendants would not prevail because the issue of the expungement of defendants' successfully completed deferred sentences must be evaluated under the Superior Court's limited *statutory* authority to expunge. This Court, adhering to article 10, section 2, of the Rhode Island Constitution,[6] "has long recognized that the Superior Court is stat-

utory in origin and derives its powers from statutes duly enacted by the Legislature." *State v. DiStefano*, 764 A.2d 1156, 1167–68 (R.I.2000). Although the Superior Court has jurisdiction to entertain equity actions, actions at law, and criminal actions,[7] the Legislature also has established an explicit statutory scheme for maintaining, handling, expunging, and sealing Bureau of Criminal Identification (BCI) records that are under the control of the Attorney General. Specifically, the Legislature has imposed upon the Attorney General the duty to maintain a record of information with respect to "all persons who shall be or shall have been convicted of felony, or imprisoned for violating any of the military, naval, or criminal laws of the United States or of any state, and of all well-known and habitual criminals from wherever procurable." G.L. 1956 § 12–1–7. The Legislature has provided for removal of such records through either "sealing"[8] or "expungement,"[9] provided that various explicit criteria are met.

Acknowledging the Legislature's mandates, we have held that the Superior Court has no authority to eradicate entries relating to criminal matters from a BCI report "unless the request for relief in that regard falls within the criteria set out by the Legislature." *State v. Manocchio*, 743

---

**6.** Article 10, section 2, of the Rhode Island Constitution sets forth the powers of the judicial branch of state government and provides, in relevant part:
"The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity. It shall have power to issue prerogative writs, and shall also have such other jurisdiction as may, from time to time, be prescribed by law. A majority of its judges shall always be necessary to constitute a quorum. The inferior courts shall have such jurisdiction as may, from time to time, be prescribed by law."

**7.** *See* G.L. 1956 §§ 8–2–13, 8–2–14, and 8–2–15.

**8.** General Laws 1956 § 12–1–12 provides the mechanism for destroying and sealing criminal records when there has been "an acquittal, dismissal, no true bill, no information, or the person has been otherwise exonerated from the offense with which he or she is charged." *See also* § 12–1–12.1.

**9.** *See* § 12–1.3–2. Also, G.L.1956 § 12–10–12 provides that if no action is taken on a complaint filed by the District Court for a misdemeanor, when the individual previously has not been convicted of a felony, the complaint automatically must be quashed and destroyed.

A.2d 555, 558 (R.I.2000) ("If the Superior Court possessed the inherent power to disregard the specific criteria and limitations on the expungement and sealing of BCI records that are set forth in the statute, then those criteria and limitations would be rendered nugatory.").[10]

Because we have determined that the Superior Court lacks inherent authority to remove records of successfully completed deferred sentences, we must address how one who has done so may have his or her record expunged. We hold that the appropriate vehicle is the expungement statute. To hold otherwise would deprive those who have been faithful to their deferred sentencing agreements of any method to seek expungement of their records.

▮ In our opinion, defendants must be eligible for statutory expungement and then must satisfy the requisite criteria for expungement to have their deferred sentences removed from their records.[11] Section 12–1.3–2 permits expungement of *records and records of convictions* if certain criteria are met.[12] Because the statute does not define "conviction," this Court must construe that term to determine whether *nolo contendere* pleas followed by deferred sentences constitute convictions

for the purpose of the statutory framework for the expungement of criminal records. We conclude that such pleas should be considered convictions for that purpose.

▮ Historically, we have equated pleas of *nolo contendere* with guilty verdicts and guilty pleas in our explanation of what constitutes a "conviction," regardless of the subsequent sentence. *See Nardone v. Mullen*, 113 R.I. 415, 418, 322 A.2d 27, 29 (1974); *State v. McElroy*, 71 R.I. 379, 392, 46 A.2d 397, 403 (1946); *Barker v. Almy*, 20 R.I. 367, 369, 39 A. 185, 186 (1898). We have reasoned that "[a] plea of *nolo contendere* is an implied confession of guilt" and therefore, "[t]he judgment of conviction follows upon such a plea as well as upon a plea of guilty * * *." *Barker*, 20 R.I. at 369, 39 A. at 186. "If the plea [of *nolo contendere*] is accepted, it is not necessary or proper that the court should adjudge the party guilty, for that follows as a legal inference from the implied confession * * *." *Id.*

▮ We believe that deferred sentences also should be considered convictions in this context, and, therefore, eligible for expungement, given the legislative intent that is expressed in the deferred sentence statute, § 12–19–19.[13] We have

---

10. The defendants' argument that the holding in *Manocchio* does not apply here because there is no specific statutory framework in the deferred sentence context is unpersuasive. We note that one of the criminal entries that we refused to expunge in *Manocchio* was a deferred sentence. Furthermore, defendants' argument that courts in other jurisdictions have exercised inherent authority to expunge criminal entries in extreme or exceptional cases is unavailing because those cases are neither binding on this Court nor applicable to this case.

11. We consider removal from the record only under § 12–1.3–2 because defendants are not eligible for sealing, §§ 12–1–12, 12–1–12.1, or expungement of a misdemeanor, § 12–10–12.

12. Section 12–1.3–2(a) says in relevant part: "Any person who is a first offender may file a motion for the expungement of all *records and records of conviction* for a felony or misdemeanor by filing a motion in the court in which the *conviction* took place, provided that no person who has been *convicted* of a crime of violence shall have his or her *records and records of conviction* expunged." (Emphases added.)

13. General Laws 1956 § 12–19–19 provides: "Whenever any prisoner is arraigned before the superior court and pleads guilty or refuses to contend with the state, he or she may be at any time sentenced by the court; provided, that if at any time the court formally defers sentencing the defendant, and

characterized the deferred sentence statute as remedial in nature, one that confers a benefit upon the accused and places within his control the opportunity for rehabilitation. *See Hazard v. Howard,* 110 R.I. 107, 111, 290 A.2d 603, 606 (1972); *Shahinian v. Langlois,* 100 R.I. 631, 637, 218 A.2d 461, 464 (1966); *State v. Robalewski,* 96 R.I. 296, 299, 191 A.2d 148, 150 (1963). Because the Superior Court lacks inherent authority to expunge, individuals who successfully complete deferred sentences can wipe their records clean only if they are covered by the umbrella of the expungement statute. In other words, if we held that deferred sentences were *not* convictions for these purposes, we completely would strip such individuals of recourse to the remedial legislation. We do not believe that such a result would be consistent with the intent set forth in the legislative framework.

We hold that deferred sentences should be treated like probationary dispositions in the expungement context. We have characterized a *nolo contendere* plea followed by probation as a conviction for purposes of expungement. *See State v. Alejo,* 723 A.2d 762 (R.I.1999); *State v. Gobern,* 423 A.2d 1177 (R.I.1981). And, although probation and deferred sentences are distinct, we have treated them similarly in many contexts. *See, e.g., Korsak v. Prudential Property & Casualty Insurance Co.,* 441 A.2d 832, 835 (R.I.1982) (holding that a *nolo contendere* plea "followed by probation or a deferred sentence

may not be considered a conviction for impeachment purposes"); *State v. Bettencourt,* 112 R.I. 706, 709 n. 2, 315 A.2d 53, 54 n. 2 (1974) (stating that for purposes of due process, probation and deferred sentence revocation hearings are equivalent). In our opinion, expungement is another context in which deferred sentences and probation should be treated similarly. It would be illogical and unfair to allow expungement of completed probationary sentences, which could last well more than five years, but forbid expungement of deferred sentences, which cannot exceed five years.

We take this opportunity to comment that the various cases cited by both parties that interpret "conviction" in civil impeachment and sentencing contexts are inapposite to the present issue. We have held that a *nolo contendere* plea followed by probation or a deferred sentence is inadmissible in a related civil action to impeach credibility because it does not qualify as a conviction. *Korsak,* 441 A.2d at 835; *Doughty v. De Amoreel,* 22 R.I. 158, 159, 46 A. 838, 838 (1900). Although this line of cases may restrict the use of such pleas in subsequent cases, it does not alter the fact that the pleas themselves are considered convictions for the purpose of the initial proceeding. Therefore, our holding today does not do violence to this precedent because the state neither seeks to use defendants' pleas as admissions of guilt in sub-

upon the deferral a written agreement concerning the deferring of sentence is entered into between the attorney general and the prisoner and filed with the clerk of the court, the court may only *impose sentence within five (5) years from and after the date of the written agreement,* unless during the period, the prisoner shall be sentenced to imprisonment in this or in any other state, in which event the court may impose sentence at any time within five (5) years from

and after the termination of the sentence of imprisonment, or unless at the time the sentence is formally deferred the prisoner is serving a term of imprisonment under sentence *previously imposed in another case,* in which event the court may impose sentence at any time within five (5) years from and after the date on which the prisoner is released from prison either on parole or at the termination of the sentence of imprisonment, whichever first occurs."

sequent civil suits nor use the pleas for impeachment purposes.

Additionally, both parties cite First Circuit cases that interpreted G.L. 1956 § 12–18–3 [14] to define conviction for the purposes of federal sentencing. *See United States v. Lindia,* 82 F.3d 1154, 1159, 1163 (1st Cir.1996) (holding that a *nolo contendere* plea followed by a deferred sentence constituted a "conviction" for purposes of the federal career offender statute, 28 U.S.C. § 994(h)); *United States v. Patrone,* 948 F.2d 813, 817 (1st Cir.1991) (holding that a plea of *nolo contendere* followed by a prison or deferred sentence constituted a "conviction" for purposes of the career criminal statute, 18 U.S.C. § 924(e)). In *Alejo,* 723 A.2d at 765 n. 2, however, we held that the expungement statutes and § 12–18–3 are "totally independent of each other." Thus, we do not believe that the First Circuit's interpretation of conviction for purposes of federal sentencing guidelines is germane to the present case. In fact, applying § 12–18–3 to the expungement context would create anomalous results because § 12–18–3(a) specifically says that completed probations

are not convictions but we have treated them as such for expungement purposes.

■ We also agree with the hearing justice's conclusion that although defendants' deferred sentences fall under § 12–1.3–2, neither defendant satisfies the requisite criteria for expungement. The procedure set out by the General Assembly in §§ 12–1.3–2 and 12–1.3–3 permits a "first offender," who has not been convicted of a "crime of violence," [15] to file a motion to have his or her past record of criminal conviction for a felony or misdemeanor expunged. A "first offender" is defined as "a person who has been convicted of a felony offense, or a misdemeanor offense, and who has not been previously convicted of or placed on probation for a felony or a misdemeanor and against whom there is no criminal proceeding pending in any court." Section 12–1.3–1(3). In *State v. Badessa,* 869 A.2d 61, 66 (R.I.2005), we interpreted "first offender" to mean "one who has been convicted of only one offense," reasoning that the Legislature did not intend for expungement statutes to apply to individuals with multiple convictions. Furthermore, the hearing justice

---

14. General Laws 1956 § 12–18–3 says in relevant part:

"(a) Whenever any person shall be arraigned before the district court or superior court and shall plead nolo contendere, and the court places the person on probation pursuant to § 12–18–1, then upon the completion of the probationary period, and absent a violation of the terms of the probation, the plea and probation shall not constitute a conviction for any purpose. Evidence of a plea of nolo contendere followed by a period of probation, completed without violation of the terms of the probation, may not be introduced in any court proceeding, except that records may be furnished to a sentencing court following the conviction of an individual for a crime committed subsequent to the successful completion of probation on the prior offense.

"(b) This section shall not apply to any person who is sentenced to serve a term in the adult correctional institutions or who is given a suspended or deferred sentence in addition to probation."

15. Under § 12–1.3–1(1), a "crime of violence" includes:

"murder, manslaughter, first degree arson, kidnapping with intent to extort, robbery, larceny from the person, first degree sexual assault, second degree sexual assault, first and second degree child molestation, assault with intent to murder, assault with intent to rob, assault with intent to commit first degree sexual assault, burglary, and entering a dwelling house with intent to commit murder, robbery, sexual assault, or larceny."

may grant a motion to expunge only if there has been no criminal proceeding against the person in the five years preceding a misdemeanor or ten years for a felony.[16] Finally, the motion for expungement must be filed after five or ten years from the date of completion of the misdemeanor or felony sentence, respectively. Section 12–1.3–3; *see Alejo,* 723 A.2d at 765 (holding that the defendants prematurely filed their motions to expunge when they did so before ten years had elapsed after the completion of probation they received for felony charges).

Here, neither defendant Briggs nor defendant Mathias meets the standard for expungement. The defendant Briggs seeks to expunge a charge of second-degree robbery, which specifically is defined as a crime of violence under § 12–1.3–1(1), thus disqualifying him for expungement of his record. Because defendant Mathias pled *nolo contendere* and received probation for various charges within the ten years preceding the filing of her motion, she is not a "first offender," and so she is similarly ineligible for expungement.

 We pause to note that both defendants' motions were filed prematurely. The defendant Briggs completed his deferred sentence in January 2000, and defendant Mathias' deferred sentence ended in March 2001. Thus, neither defendant was entitled to relief under the expungement statute until ten years after the deferred sentence period expired. Although

the trial justice found that neither motion was timely, she did not base her decision on this issue. Whether a motion for expungement in accordance with §§ 12–1.3–2 and 12–1.3–3 is timely filed should be the first order of business by the hearing justice. *See State v. Gervais,* 607 A.2d 881, 882 (R.I.1992) (holding that the term of expungement of a record for a felony disposition is ten years); *see also Alejo,* 723 A.2d at 764 (holding that an applicant for expungement must wait the period required by statute between the completion of the sentence or probation and the filing of the motion).

Therefore, although the defendants' successfully completed deferred sentences are eligible for consideration under the expungement statute because they are considered "convictions" in the expungement milieu, the trial court correctly denied the defendants' motions to expunge because they do not satisfy the requisite criteria.

## Conclusion

We affirm the judgment of the Superior Court, and return the papers in this case thereto.

---

**16.** Section 12–1.3–3(b) provides in relevant part:
 "The court, after the hearing at which all relevant testimony and information shall be considered, may in its discretion order the expungement of the records of conviction of the person filing the motion if it finds:
 (1) That in the five (5) years preceding the filing of the motion, if the conviction was for a misdemeanor, or in the ten (10) years preceding the filing of the motion if the conviction was for a felony, the petitioner has not been convicted nor arrested for any felony or misdemeanor, there are no criminal proceedings pending against the person, and he or she has exhibited good moral character[.]"