DECISION
Before this Court is Defendant's Motion to Seal the records relating to a deferred sentence he received in this case on January 15, 2003. Defendant, Joseph Warzycha, seeks this relief pursuant to G.L. 1956 § 12-19-19(c), as recently amended. The State objects, arguing that the amendment to § 12-19-19 does not apply retroactively and that it violates the doctrine of separation of powers. For the reasons that follow, Defendant's Motion is denied.
 I Facts and Travel
The tragic facts of this case began in December, 2001. At that time, Defendant was a member of the East Providence Police Department's Special Response Team, which was a special weapons and tactics (SWAT) team and operated under the direction of Captain Alistair McGregor. On December 12, 2001, the team was engaged in a training exercise at a bus yard in East Providence, which training exercise was designed to simulate team assaults and entries in or on a school bus in which hostages were being held. While no live weapons were to be used in this exercise, and indeed members of the SWAT team cleared their weapons of live ammunition before the exercise began, Defendant had received permission to retrieve his own sniper rifle to introduce the role of a sniper into this particular training exercise. Defendant had failed to clear *Page 2 
his rifle of ammunition or otherwise inspect it prior to bringing it to the training exercise. Tragically, in a "dry-fire" exercise, Defendant aimed his rifle at Captain McGregor and pulled the trigger; the gun discharged and struck Captain McGregor in the head, causing his death.
On April 24, 2002, Defendant was indicted by a grand jury on one count of involuntary manslaughter. Prior to trial, Defendant entered a plea of nolo contendere to the involuntary manslaughter charge and received a five-year deferred sentence on January 15, 2003. It is uncontested that Defendant successfully completed the terms of his five-year deferred sentence agreement that he entered into with the State.
On June 29, 2010, Defendant filed his Motion to Seal pursuant to § 12-19-19(c), as amended on June 25, 2010.[1] Defendant argues that because he has complied with all of the terms and conditions of his written-deferred sentence agreement with the State, he is entitled to have the records in this indictment sealed. Defendant further argues that he is the type of person who deserves to have his record sealed, and that he was advised by legal counsel at the time he entered into the deferred-sentence agreement on January 13, 2003, that his record would be immediately expunged based upon the common practice at that time. The State objected, [2] arguing that the amendment to § 12-19-19(c) is not retroactive, and that such retroactive application would violate the separation of powers doctrine. *Page 3 
Following the State's objection, a briefing schedule was set to allow all interested parties to file memoranda with this Court, including additional defendants in unrelated cases who likewise sought to have their records sealed pursuant to § 12-19-19(c) after successfully completing the terms of their deferred-sentence agreements. As the State had filed only its memorandum in the above-captioned case on September 17, 2010, [3] but had not specifically objected in writing to other defendants' Motions to Seal, this Court notified all counsel of record on the various Motions to Seal that any additional memorandum on the respective positions of the State and defense counsel would be accepted up until the close of business on November 1, 2010. Through such correspondence, this Court also notified all counsel that oral argument would be conducted on November 5, 2010, with decisions to be issued on November 12, 2010. The Court did, in fact, conduct oral argument on November 5, 2010, [4] and decisions in each case in which counsel argued before this Court have been contemporaneously filed herewith. *Page 4 
 II Anaylsis A The Retroactive Application of § 12-19-19, AsAmended
The State maintains that Defendant is not entitled to relief pursuant to § 12-19-19(c), as amended, in the absence of clear, strong language or necessary implication that such amendment should be applied retroactively. Defendant, on the other hand, contends that § 12-19-19, as amended in its entirety, simply restates what has always been the case with deferred sentences and does nothing more than clean up the prior version of the statute without making a single substantive change.
As a threshold matter, it is necessary to consider the statute in its original and amended form. Section 12-19-19 in its original form reads as follows:
 "Whenever any prisoner is arraigned before the superior court and pleads guilty or refuses to contend with the state, he or she may be at any time sentenced by the court; provided, that if at any time the court formally defers sentencing the defendant, and upon the deferral a written agreement concerning the deferring of the sentence is entered into between the attorney general and the prisoner and filed with the clerk of the court, the court may only impose sentence within five (5) years from and after the date of the written agreement, unless during the period, the prisoner shall be sentenced to imprisonment in this or any other state, in which event the court may impose sentence at any time within five (5) years from and after the termination of the sentence of imprisonment, or unless at the time the sentence is formally deferred the prisoner is serving a term of imprisonment under sentence previously imposed in another case, in which event the court may impose sentence at any time within five (5) years from and after the date on which the prisoner is released from prison either on parole or at the termination of the sentence of imprisonment, whichever occurs first." Section 12-19-19 (pre-June 25, 2010 amend). *Page 5 
As amended, § 12-19-19(a) is a redesignation of the original § 12-19-19, and reads as follows:
 "(a) Whenever any person is arraigned before the superior court and pleads guilty or nolo contendere, he or she may be at any time sentenced by the court; provided, that if at any time the court formally defers sentencing then the person and the attorney general shall enter into a written deferral agreement to be filed with the clerk of the court. When a court formally defers sentence, the court may only impose sentence within five (5) years from and after the date of the written deferral agreement, unless during the five (5) year period, the person shall be declared to have violated the terms and conditions of the deferment pursuant to subsection (a) [sic][5] of this section in which event the court may impose sentence." Section 12-19-19(a) (amend. eff. June 25, 2010) (emphasis added).
The Legislature also added the following subsections:
 "(b) It shall be the express condition of any deferment of sentence in accordance with this section that the person agreeing to said deferment of sentence shall at all times during the period of deferment keep the peace and be of good behavior. A violation of this express condition or any other condition set forth by either the court or the written deferral agreement shall violate the terms and conditions of the deferment of sentence and the court may impose sentence. The determination of whether a violation has occurred shall be made by the court in accordance with procedures relating to violation of probation section 12-19-2 and 12-19-4. (c) If a person, after the completion of the five (5) year deferment period is determined by the court to have compiled [sic] with all of the terms and conditions of the written deferral agreement, then the person shall be exonerated of the charges for which sentence was deferred and records relating to the criminal complaint, information or indictment shall be sealed pursuant to provisions of chapter 1 section 12 of this title. Further, if any record of the criminal complaint, information or indictment has been entered into a docket or alphabetical index, whether in writing or electronic information storage or other data compilation system, all references to the identity of the person charged by the complaint shall be sealed." Section 12-19-19(b) — (c) (amend. eff. June 25, 2010) (emphasis added). *Page 6 
Finally, Section 2 of 2010 P.L. Ch 128 provides, "This act shall take effect upon passage."
 1 By Its Own Terms, § 12-19-19, As Amended, Does Not Indicate An Intent To Be AppliedRetroactively
It is axiomatic that statutes and their amendments are presumed to apply prospectively. Direct Action for Rights and Equality v.Gannon, 819 A.2d 651, 658 (R.I. 2003); Hydro-Manufacturing,Inc. v. Kayser-Roth Corp., 640 A.2d 950, 955 (R.I. 1994) (citingLawrence v. Anheuser-Busch, Inc.,523 A.2d 864, 869 (R.I. 1987)). However, a statute may be applied retroactively if the General Assembly indicates through "clear, strong language or a necessary implication that [it] intended to give the statute retroactive effect." Direct Action for Rightsand Equality, 819 A.2d at 658. It has been held that language included by the Legislature that "this act shall take effect upon passage" indicates that the statute is intended to have prospective application only. See Hydro-Manufacturing,640 A.2d at 955 (finding neither statutory language nor legislative intent in applying groundwater pollution liability statute retroactively where law "shall take effect upon passage");VanMarter v. Royal Indemnity Co., 556 A.2d 41, 44 (R.I. 1989) (holding no language or other indication of legislative intent, or by necessary implication, that amendment to statutory definition of uninsured motorist would be applied retroactively where "effective upon passage").
The plain language of § 12-19-19, as amended, does not contain any "clear, strong language" or "necessary implication" that it should apply retroactively. Both House and Senate versions of the amendment to § 12-19-19 fail to refer to deferred sentences entered into prior to June 25, 2010, nor do they contain explicit language permitting individuals whose sentences were previously deferred to seek relief under § 12-19-19(c). Instead, the two versions state only *Page 7 
that the "act shall take effect upon passage." 2010 P.L Ch. 128, § 2; 2010 P.L. Ch. 256, § 2. Further, because § 12-19-19(b) now provides an express condition of any deferred sentence that the defendant shall, at all times during the period of deferment, keep the peace and be of good behavior, [6]
the amendment to § 12-19-19 in its entirety cannot, by necessary implication, apply retroactively to include this express condition. Accordingly, this Court finds that the terms of § 12-19-19, as amended, do not indicate an intent to apply retroactively.
 2 As Amended, § 12-19-19 Confers Substantive Rights on A Larger Universe of Individuals And Cannot Be Applied Retroactively
Alternatively, when a statute lacks clear, strong language indicating retrospective application, or no necessary implication exists, this Court may look to whether a statute is remedial or substantive in nature to determine whether it applies retroactively.Direct Action for Rights and Equality, 819 A.2d at 658. "Substantive statutes, which create, define, or regulate substantive legal rights, must be applied prospectively . . . In contrast, remedial and procedural statutes, which do not impair or increase substantive rights but rather prescribe methods for enforcing such rights, may be construed to operate retroactively." Pion v. BessEaton Donuts Flour Co., 637 A.2d 367, 371 (R.I. 1994).
Defendant suggests that because the Supreme Court has stated that the deferred sentence statute is remedial in nature,see State v. Briggs, 934 A.2d 811, 817 (R.I. 2007), then any amendment thereto must also be remedial in nature and apply retroactively. Indeed, on at least two occasions prior toBriggs, the Supreme Court has held that § 12-19-19 is remedial in nature. See Hazard v. Howard,290 A.2d 603 (R.I. 1972) (holding that a statute which provides for *Page 8 
deferment of sentence in certain cases when a defendant enters a plea of guilty or nolo contendere is a remedial statute which confers benefit upon the accused and is a statute of grace);State v. Robalewski, 96 R.I. 296, 299 (R.I. 1963) (holding § 12-19-19 is manifestly remedial in nature). However, those holdings do not end this Court's analysis. Rather, this Court must consider whether the amendment to the statutory scheme concerning deferred sentences "create[s], define[s], or regulate[s] substantive legal rights" or "do[es] not impair or increase substantive rights but rather prescribe[s] methods for enforcing such rights." Pion, 637 A.2d at 371; cf. DirectAction for Rights and Equality, 819 A.2d at 658-59 (holding that amendment to Access to Public Records Act providing for payment of attorneys' fees is remedial where it provides additional remedial measure of attorneys' fees to an existing substantive right). Just as an amendment to a substantive statute may be remedial in nature,see Direct Action for Rights and Equality,819 A.2d at 658-59, so too may an amendment to a remedial statute be substantive in nature.
Here, the amendment to § 12-19-19(c) expands the universe of individuals who may seek relief to have their criminal records shielded from the public. Specifically, § 12-19-19(c) allows defendants who successfully complete a deferred sentence to have their records sealed in accordance with G.L. 1956 § 12-1-12, regardless of whether the crime was one of violence or if the defendant had another misdemeanor conviction.[7] Prior to this amendment, individuals who successfully completed a deferred sentence agreement could only seek relief under the expungement statute, which sets forth the applicable time periods such defendants are required to *Page 9 
wait after the completion of the deferred sentence as well as the criteria a defendant must satisfy. Briggs,934 A.2d at 816.
As evidence that the universe of individuals who may seek relief has been expanded by this amendment, this Court need only look to the two defendants in Briggs, who are also before this Court on their own Motions to Seal.[8] In Briggs, James Briggs and Anna Mathias[9] successfully completed deferred sentences and moved to have their records expunged. Id. at 813-14. A hearing justice of the Superior Court denied both defendants' motions, finding that the sentences were not automatically expunged upon completion, but rather were subject to the requirements of the expungement statute, §§ 12-1.3-2 and 12-1.3-3. Id. at 814. The Supreme Court affirmed the judgments of the Superior Court, holding that the Superior Court lacks the inherent authority to remove records of successfully completed deferred sentences, and thus the appropriate vehicle for such relief is the expungement statute.Id.
The Supreme Court held that "defendants must be eligible for statutory expungement and then must satisfy the requisite criteria for expungement to have their deferred sentences removed from their records." Id. at 816. The Briggs Court ultimately found that neither Briggs nor Mathias satisfied the criteria for expungement because Briggs himself was on a deferred sentence for a second-degree robbery, which is a crime of violence as defined by § 12-1.3-1(1), and Mathias is not a first time offender, as defined by § 12-1.3-1(3). Id. at 819. Accordingly, the Supreme Court denied their request for relief.[10] *Page 10 
Defendant, along with the two defendants in Briggs and others, have argued that their successful completion of their deferred-sentences mandate that their records be sealed pursuant to § 12-19-19(c). While the deferred sentence statute is remedial in nature, the amendment thereto confers a substantive right upon Defendant and others which was otherwise not available. First, as evidenced by the Supreme Court's denial of relief to the two defendants in Briggs, the amendment expands the universe of persons who are afforded the right to have their criminal past shielded from public view. Second, § 12-19-19(c) provides that the individual seeking relief "shall be exonerated of the charges for which sentence was deferred." "Exonerate" has been defined as "[t]o clear from accusation or blame: exculpate." Webster's ThirdNew International Dictionary 797 (1961). This exoneration cannot be considered merely procedural or remedial in nature. Rather, this mandated exoneration creates and defines the legal culpability — or, more accurately, freeing the defendant from any legal responsibility or blame — of an individual who admitted guilt through a guilty plea or impliedly confessed his or her guilt by pleading nolo contendere.
It would be illogical to conclude that the amendment does not create a substantive right to individuals who seek relief under § 12-19-19(c). Put another way, as best demonstrated by the two defendants in Briggs, the amendment clearly creates a substantive right to seal records of those individuals who were not otherwise eligible for relief. The amendment is not merely a method for enforcing existing rights. See Pion,637 A.2d at 371. Further, the mandated exoneration set forth in § 12-19-19(c) also provides for the substantive right ofbeing made free from legal culpability after previously admitting guilt or impliedly admitting guilt, and is also not merely a method for enforcing rights. See Pion,637 A.2d at 371. *Page 11 
For these reasons, this Court concludes that the amendment is substantive in nature and cannot be applied retroactively in the absence of any clear, strong language or a necessary implication that the Legislature intended to give the statute retroactive effect. As there is neither clear language or a necessary implication that the amendment was to apply retroactively, this Court finds that Defendant, who entered into a nolo contendere plea followed by a deferred sentence on January 15, 2003, is not entitled to the relief sought pursuant to § 12-19-19(c), as amended on June 25, 2010.
 B Separation of Powers Doctrine
Even if § 12-19-19, as amended, did apply retroactively to Defendant's deferred sentence entered into in 2003, this Court still must consider whether the amendment violates the doctrine of separation of powers. The State maintains that the retroactive application of the amendment violates the separation of powers doctrine. Notably, Defendant and others before this Court entered into and completed deferred sentences prior to the amendment to § 12-19-19. As no defendant who entered into deferred sentence agreement subsequent to June 25, 2010, would have completed that five-year deferment, it is unnecessary for this Court to rule upon the constitutionality of the amendment to § 12-19-19 as applied prospectively. For the reasons discussed herein, this Court finds that, even if the amendment to § 12-19-19 applied retroactively, its retroactive application is an unconstitutional encroachment by the Legislature on the functions of the judiciary.
The separation of powers doctrine derives from Article III of the Rhode Island Constitution, which states, "The powers of the government shall be distributed into 3 *Page 12 
departments: the legislative, executive, and judicial." Flowing from this separation of powers enumerated in the Constitution, "it has unquestionably been the established law . . . that the general assembly cannot under our Constitution rightfully exercise judicial power." State v. Garnetto,75 R.I. 86, 90, 63 A.2d 777, 779 (1949); see alsoState v. Greenberg, 951 A.2d 481, 496-97 (R.I. 2008);Lemoine v, Martineau,115 R. I. 233, 237-38, 342 A.2d 616, 620 (R.I. 1975). InLemoine, the Supreme Court discussed the exercise of judicial power as "the control of a decision in a case or the interference with its progress or the alteration of the decision once made."Id. at 620 (citing Taylor v. Place, 4 R.I. 324 (1856)).
The party raising the question of a statute's unconstitutionality has the burden of proving that fact beyond a reasonable doubt.Garnetto, 75 R.I. at 92, 63 A.2d at 781; seealso Prata Undertaking Co. v. Bd. ofEmbalming Funeral Directing,55 R.I. 454, 461, 182 A. 808, 811 (R.I. 1936). Unless an act is unmistakably in excess of legislative power, a court should not construe a statute in a manner that renders it unconstitutional.See In re Christopher S.,776 A.2d 1054, 1057 (R.I 2001). This Court is required to "make every reasonable intendment in favor of the constitutionality of a legislative act" and draw all presumptions in favor of its constitutionality. Garnetto,75 R.I. at 92, 63 A.2d at 781 (citing Gorham v. Robinson,57 R.I. 1, 86 A. 832 (R.I. 1936)).
In assessing whether the amendment to § 12-19-19 constitutes an unconstitutional exercise of judicial power by the Legislature, it is necessary to consider the state of existing relevant law. It is well settled that the Legislature is presumed to know the state of existing relevant law when it enacts a statute. State v.Briggs, 934 A.2d 811, 814 (R.I. 2007) (citing Defenders ofAnimals, Inc. v. Department of Environmental Management,553 A.2d 541, 543 (R.I. 1989)). The Rhode Island Supreme Court has repeatedly held that a nolo contendere plea *Page 13 
is an implied confession of guilt which cannot be considered an exoneration. In State v.Gobern, § 12-19-19 (R.I. 1987), the defendant had entered a nolo contendere plea to a felony charge and successfully served nine months on probation. Arguing that he was never "convicted" of the felony charge, he sought to have the records of his arrest and nolo plea destroyed pursuant to the sealing statute, § 12-1-12.Id. at 1179. The trial justice denied the requested relief and the Supreme Court affirmed. Id. at 1178. The Court stated:
 "In Rhode Island a nolo plea, once accepted, becomes an implied confession of guilt. Thus, for the purposes of a case in which it is entered, such plea is equivalent to a plea of guilty. . . . [O]nce the nolo plea is entered, it is as much a conviction as a jury-returned guilty verdict against the pleader would have been, and jeopardy attaches with the acceptance of the plea. Nardone v. Mullen, 113 R.I. 415, 418 322 A.2d 27, 29 (1974).
 Since [defendant] stands convicted of violating the provisions of § 11-47-8, all that remains to decide is whether his successful performance as a probationer can be considered as an exoneration within the meaning of § 12-1-12. Webster's Third New International Dictionary defines the word "exonerate" as meaning "to relieve from a charge, obligation, or hardship: clear from accusation or blame." However, probation is a substitute for incarceration rather than a synonym for exculpation. Persons on probation are not absolved of the charges that led to their status as probationers." Id. at 1179 (citations omitted).
In State v. Olink,507 A.2d 443, 446 (R.I. 1986), the Supreme Court held that a nolo contendere plea followed by a filing is not an "exoneration" under the sealing statute, § 12-1-12. The Court restated the discussion in Gobern:
 "[A] plea of nolo contendere constitutes a confession of guilt or a guilty plea and that once entered, it is as much a conviction against the pleader as a jury's guilty verdict would have been. State v. Gobern, 423 A.2d 1177 (R.I. 1981); Nardone v. Mullen, 113 R.I. 415, 322 A.2d 27 (1974). . . . The filing of a complaint is a disposition tool that, in appropriate cases, affords defendants the opportunity to make a new beginning without carrying forth the weight of a criminal record for the rest of their lives. The fact that a complaint was filed after the plea was made does not transform it into an exoneration under [§ 12-1-12]." Id. *Page 14 
In State v. Gervais, 607 A.2d 881, 881 (R.I. 1992), the Court concluded that a plea of nolo contendere followed by the successful completion of a term of probation "does not constitute an exoneration of that charge" and the sealing statute, § 12-1-12, does not apply, but rather the expungement statute applies.
Finally, the Briggs Court also considered the effect of a nolo contendere plea:
 "Historically, we have equated pleas of nolo contendere with guilty verdicts and guilty pleas in our explanation of what constitutes a `conviction,' regardless of the subsequent sentence. . . . We have reasoned that `[a] plea of nolo contendere is an implied confession of guilt' and therefore, `[t]he judgment of conviction follows upon such a plea as well as upon a plea of guilty * * * .' . . . `If the plea [of nolo contendere] is accepted, it is not necessary or proper that the court should adjudge the party guilty, for that follows as a legal inference from the implied confession * * * .'" Briggs, 934 A.2d at 816 (citations omitted).
Consistent with the Supreme Court's decisions in Gobern,Olink, Gervais and Briggs, the Legislature is presumed to have known that a guilty or nolo contendere plea, once accepted by the trial court, cannot be an exoneration.
 1 The Mandated Exoneration Violates Separation ofPowers
While the State and other defendants[11] have concentrated their constitutional arguments on whether a "final judgment of conviction" is being vacated by the application of § 12-19-19(c), this Court finds that the constitutional analysis need not stretch that far. Rather, the mandate that a person who pleads guilty or nolo contendere and successfully completes a deferred sentence "shall be exonerated" necessarily vacates that admission of guilt or implied admission of guilt *Page 15 
which was accepted by the trial judge at the time of the plea, regardless of the sentence that was imposed or the finality of that judgment of conviction. This is certainly an "alteration of a decision" made by the trial justice who accepted the plea as a knowing and voluntary admission of guilt or no contest in accordance with the trial court's obligations under Super. Ct. R. Crim. P. 11.See Lemoine, 115 R.I. at 237-38, 342 A.2d at 620. For the Legislature to mandate that this Court free a defendant from all blame or legal responsibility after the acceptance of an implied admission of guilt — which, upon acceptance, is as much a conviction as a jury-returned guilty verdict, see Nardone,113 R.I. at 418, 322 A.2d at 29 — necessarily alters that very decision of the trial court to accept the defendant's admission of guilt or no contest.
Further, Garnetto, supra, and Hazard v.Howard, 110 R.I. 107, 290 A.2d 603 (1972), support a finding that the amendment to § 12-19-19, as applied retroactively, would violate the separation of powers doctrine. In Garnetto, the Supreme Court declared that the enactment of what is now codified at § 12-19-18(a), which terminates the imprisonment for anyone who violated a deferred sentence when an indictment of the pertinent charge was not returned, was unconstitutional in its entirety. The Court reasoned that the act
 "makes it mandatory that a court grant a motion to quash the sentence of a person duly imprisoned and terminate his imprisonment. By the terms of that chapter the superior court is expressly directed to act upon a judgment only in a specified manner, and it is given no opportunity to exercise its own judicial discretion or power in that respect. . .We hold, therefore, that Chap. 2085 is an indirect exercise of judicial power by the general assembly and is unconstitutional and void." Garnetto, 75 R.I. at 92, 63 A.2d at 780.
In Hazard, the Supreme Court narrowed its prior holding and limited Garnetto to its facts. The Court stated that Garnetto "stands for the proposition the § 12-19-18 in unconstitutional in so *Page 16 
far as deferred sentence agreements executed prior to its enactment are concerned." Hazard,110 R.I. 110, 290 A.2d at 605 (emphasis added).
In the case at bar, this Court finds beyond all reasonable doubt that the terms of § 12-19-19, as amended in its entirety and as applied retroactively, is a mandate to the trial courts of this State directing and compelling such courts to quash a plea previously imposed accepted by the trial court as a knowing and voluntary admission or implied admission of guilt, which mandate amounts to a reversal of the court's pronounced judgment.See Garnetto, 75 R.I. at 92, 63 A.2d at 780;Hazard, 110 R.I. at 110, 290 A.2d at 605 (limiting unconstitutionality of statute to its retroactive application). By virtue of this mandate, a trial judge is expressly directed to act upon its previous judgment only in a specified manner, to wit, by exonerating or absolving a defendant of all legal blame for a crime to which he or she admitted or impliedly admitted guilt.Garnetto, 75 R.I. at 92, 63 A.2d at 780.
Accordingly, the Court finds that the amendment, as applied retroactively, alters decisions of trial judges once made in accepting a guilty or nolo contendere plea at the time the deferred sentence was imposed by mandating that such defendants be exonerated notwithstanding the previously accepted admission or implied admission of guilt. This mandate, as applied retroactively, unmistakably constitutes an unconstitutional exercise of judicial power by the Legislature and is void.
 2 Section 12-19-19(c) As Amended Not Only ReversesBriggs, But Also Disregards The Express Findings By The SupremeCourt
The amendment to § 12-19-19 responds to the Supreme Court's holding in Briggs in three critical respects: (1) it purports to provide a separate statutory scheme to provide relief to *Page 17 
individuals who successfully complete a deferred sentence; (2) it purports to afford the two defendants in Briggs, as well as other individuals who otherwise were ineligible for relief under the expungement statute, with relief to have their records removed from public view and to be deemed not legally culpable for the criminal conduct to which the individual previously admitted or impliedly admitted to such guilt; and (3) it disregards the express finding by the Supreme Court that defendants who received deferred sentences are not entitled to have their records sealed.Briggs, 934 A.2d at 816 n. 11.
As discussed supra, it is an unconstitutional exercise of judicial power for the Legislature to mandate exoneration after a plea of guilty or nolo contendere is accepted by the trial court. Also troubling, however, is the Legislature's disregard of the express finding by the Supreme Court that a defendant who successfully completed a deferred sentence is not entitled to have the record sealed under § 12-1-12.Id. at 816 n. 11. Section 12-1-12 has not been amended sinceBriggs was decided in 2007. That section provides in pertinent part:
 "(a) Any fingerprint, photograph, physical measurements, or other record of identification, heretofore or hereafter taken by or under the direction of the attorney general, the superintendent of state police, the member or members of the police department of any city or town or any other officer authorized by this chapter to take them, of a person under arrest, prior to the final conviction of the person for the offense then charged, shall be destroyed by all offices or departments having the custody or possession within sixty (60) days after there has been an acquittal, dismissal, no true bill, no information, or the person has been otherwise exonerated from the offense with which he or she is charged, and the clerk of court where the exoneration has taken place shall, consistent with § 12-1-12.1, place under seal all records of the person in the case, including all records of the division of criminal identification established by § 12-1-4; provided, that the person shall not have been previously convicted of any felony offense. Any person who shall violate any provision of this section shall be fined not exceeding one hundred dollars ($100)." Section 12-1-12(a) (emphasis added). *Page 18 
In citing § 12-1-12 in its decision and in expressly finding that defendants on deferred sentences are not eligible to have records sealed pursuant to § 12-1-12, See Briggs,934 A.2d at 815 n. 8, 816 n. 11, the Briggs Court has concretely established that the sealing statute cannot afford relief to defendants on deferred sentences. Because the sealing statute has not been amended since Briggs, sealing still appliesonly when there has been "an acquittal, no true bill, no information, or the person has otherwise been exonerated from the offense with which he or she is charged." Sec. 12-1-12(a). As discussed at length supra at 11-13, there can be no exoneration of a charge for which a defendant received a deferred sentence after pleading guilty or nolo contendere. Accordingly, in the absence of any amendment to the sealing statute itself, Briggs dictates that defendants who successfully complete deferred sentences remain ineligible to have such records sealed under § 12-1-12.
While this Court fully recognizes that it is within the purview of the Legislature to adapt laws to the changing social, political and economic needs of the community, this Court is nonetheless constrained by the controlling Supreme Court precedent inBriggs, and specifically its finding that defendants on deferred sentences are not entitled to have their records sealed. Indeed, counsel for defendants in Briggs conceded to the earlier trial court that "someone who successfully completes a deferred sentence without violation, that's not an exoneration. So we don't think that the provisions of law [dealing with the sealing of records] applies."2007 WL 6150485 (State's Brief, at 5 n. 9, quoting Trial Tr. at 5).[12]
For the General Assembly to now mandate exoneration and sealing, in direct contravention of the express determination inBriggs that defendants on deferred sentences are *Page 19 
not eligible for sealing, offends the notion of separation of powers and is an improper response to the Court's decision inBriggs. By comparison, and by way of example only, had the General Assembly, in response to Briggs, amended theexpungement statute to eliminate the necessary waiting period after the completion of a deferred sentence and to modify the criteria for defendants on deferred sentences, such an amendment, if expressly made retroactive, would be less likely to run afoul of the separation of powers doctrine or alter the express findings inBriggs. While this Court will not speculate on the wisdom or rationale for sealing records of deferred sentences as opposed to expunging such records, it is abundantly clear that the Legislature had noble intentions of addressing what may have been collectively viewed as an inequity as applied to individuals who successfully completed a deferred sentence. However, that noble effort does not in and of itself dictate that the manner in which the Legislature addressed that issue passes constitutional muster. Notwithstanding the legitimate policy interests in allowing individuals who successfully complete a deferred sentence to be able to start anew with a clean criminal record, this Court cannot grant such relief because the amendment to § 12-19-19, in its present form, fails to pass constitutional muster.
 C Equitable Considerations Cannot Outweigh An Unconstitutional Statute
Defendant, and others, argue at length that their understanding of the deferred-sentence agreement at the time it was entered warrants consideration by this Court. More specifically, affidavits were presented from Defendant's counsel as well as counsel for other defendants outlining the representations made to individuals considering a deferred-sentence agreement and the risks and benefits to such an agreement. While this Court recognizes such affidavits as good faith submissions, this Court can not be persuaded by such arguments. Rather, such equitable *Page 20 
considerations appear to have been made before the Supreme Court inBriggs, [13] and in all likelihood have been made to members of the General Assembly. It is this Court's obligation, nonetheless, to apply the law as written. The Supreme Court in Briggs saw fit to apply the expungement statute, with its five-year and ten-year waiting periods and criteria for eligibility, notwithstanding the representations that had been made to defendants based upon the common practice at the time. Simply put, until the Supreme Court determines otherwise or the General Assembly enacts constitutionally sound legislation, this Court is bound to apply the holding in Briggs, including its finding that defendants on deferred sentences are not eligible to have their records sealed under § 12-1-12.
This Court's determination should not be interpreted as an effort to further punish Defendant and others or to purposefully delay their ability to proceed in life with a clean criminal record. Indeed, this Court acknowledges the sound policy reasons supporting the 2010 legislation. However, in light of this Court's finding that § 12-19-19, as amended, is unconstitutional as applied retroactively, and in keeping with our governmental system of checks and balances, this Court cannot apply an unconstitutional law in order to afford Defendant and other relief.
 III Conclusion
For the foregoing reasons, this Court finds that § 12-19-19, as amended in its entirety, does not apply retroactively because it contains no express language or necessary implication that it is intended to apply retroactively, and because it creates substantive rights that can only be *Page 21 
applied prospectively. Further, even if § 12-19-19 did apply retroactively, it would constitute an exercise of judicial power by the Legislature in violation of the separation of powers doctrine. Accordingly, Defendant's Motion to Seal pursuant to § 12-19-19(c) is denied.
[1] Two substantially similar bills amending § 12-19-19 were passed by the General Assembly in the 2010 legislative session.See 2010 P.L. Ch. 128 (S2646A); 2010 P.L. Ch. 256 (H7923). The Senate version, codified at 2010 P.L. Ch. 128 was enacted on June 25, 2010, prior to the July 1, 2010 enactment of H7923. For purposes of this Decision, the June 25, 2010 date of enactment is used herein.
[2] Prior to the State's objection to Defendant's Motion to Seal in this matter, the State had not objected to the sealing of other records relating to successfully completed deferred sentences pursuant to § 12-19-19, as amended. It appears that the State's attention was drawn to this case because the crime for which Defendant was on a deferred sentence is a crime of violence for which Defendant is now seeking to be exonerated. It should be noted at the outset that this Court's determination on the retroactive application and the constitutional arguments applies equally to this Defendant as well as to first time offenders for non-violent crimes who successfully completed a deferred sentence prior to the 2010 amendment to § 12-19-19.
[3] Contrary to Defendant's representations in the November 8 and November 9, 2010 filings seeking leave to reopen briefing and argument and for reconsideration of the same, this Court was not advised of nor in any way granted the State any extension to brief the issues, which was originally due on September 10, 2010.
[4] On November 8, 2010, Defendant's counsel sought leave to further research and brief issues raised by this Court at oral argument on November 5, 2010. Having notified all counsel present on November 5, 2010 that decisions would be issued on November 12, 2010, and Defendant's counsel having failed to request leave to file supplemental memorandum at the conclusion of argument on November 5, this Court denied such request as untimely. On November 9, Defendant's counsel filed a Motion for Reconsideration of this Court's denial of his earlier request to reopen briefing, which motion was also denied. Defendant's continued suggestion that further briefing should be permitted because the State's Surreply filed on November 1, 2010, was not delivered to Defendant's counsel (but was in fact delivered to other defense counsel) and because no defense counsel adequately responded to issues raised by this Court at oral argument are not adequate bases for further briefing and delaying the issuance of this Decision and others. The State's Surreply did not raise any novel arguments that were not previously briefed, and all other defense counsel had received and were presumably prepared as it relates to the retroactivity of the statute to address the State's Surreply. Further, requiring a trial court (or an appellate court) to reopen briefing and/or argument because a judge raised pertinent issues at oral argument would chill the free-flowing discussion of the issues at oral argument and cause the courts and litigants to be trapped in a cycle of briefing — argument — briefing — argument, etc. Not only is additional briefing unnecessary here, but it would create an intolerable disruption to the conduct of this Court's calendar and the several dozen other defendant, most of whom are pro se, who await this Court's decision.
[5] The House version of this amendment, enacted on July 1, 2010, properly refers to "subsection (b)." See
P.L. Ch. 256.
[6] Unquestionably, the practice prior to this amendment would be to violate a defendant on a deferred sentence for failing to keep the peace and be of good behavior if such conduct occurred during the five-year deferment period. However, this is a new statutory condition that can only be meant to apply prospectively.
[7] Section 12-1-12(a), the sealing statute, precludes the sealing of records if the person has been previously convicted of a felony offense; however, one may be eligible for sealing even if he or she had a previous misdemeanor conviction. By contrast, expungement is only permitted for first time offenders (regardless of another conviction or probationary sentence arising from a felony or misdemeanor charge) and for offenses which are not within the definition of a crime of violence.See § 12-1.3-1(1), (3); see also Briggs,934 A.2d at 818-19.
[8] Decisions on those separate cases, State v. JamesBriggs, P2-1994-1248A, and State v. Anna M. Mathias, P2-1994- 3597A, are contemporaneously filed herewith.
[9] Those same two defendants, James Briggs and Anna M. Matthias, have also filed Motions to Seal their records pursuant to § 12-19-19(c) as amended. Briefing and argument was conducted on behalf of those two defendants as well and separate decisions are being issued contemporaneously hereto.
[10] In addition to not satisfying the statutory criteria for expungement, the Briggs Court also noted that defendants' request for relief was premature as ten years had not elapsed since the completion of defendants' deferred sentences.Id. at 819.
[11] Defendant Warzycha did not address the State's separation of powers argument as originally presented in the State's Objection filed September 17, 2010, to which Defendant responded in writing on October 14, 2010. The State's Surreply restated its argument relative to retroactivity, not separation of powers. Only counsel for Briggs and Mathias addressed the separation of powers argument.
[12] While this argument was not made by Defendant in this action, this Court notes without deciding that counsel for Briggs and Mathias may be judicially estopped from arguing their entitlement to sealing and exoneration. See Gaumond v. Trinity RepertoryCo., 909 A.2d 512, 520-21 (R.I. 2006) (doctrine of judicial estoppel protects integrity of judicial system by prohibiting parties from deliberately changing positions to assert an inconsistent position).
[13] At oral argument before this Court, counsel for Briggs and Mathias, who served as appellate counsel in Briggs, confirmed that the equitable arguments espoused by the various defendants were generally addressed before the Supreme Court.