285 A.2d 395.

STATE *vs.* EDWARD G. PLANTE.

JANUARY 6, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. These proceedings were commenced pro se with the filing in this court of an instrument wherein the said Edward G. Plante averred that he was being unlawfully deprived of his liberty as an alleged violator of a deferred sentence agreement.

We articulated said instrument as a petition for a writ of habeas corpus and directed the warden of the Adult Correctional Institutions, as respondent, to show cause, if any he had, why the writ should not issue. In the same order, we granted petitioner's motion for the appointment of counsel and directed the public defender to represent him in the further prosecution of his petition in this court. *State* v. *Plante,* 108 R. I. 903, 271 A.2d 631 (1970).

The respondent warden duly filed his answer and petitioner filed a reply thereto. From the petition, the show cause answer and the reply to that answer, the following circumstances were established.

On February 5, 1969, petitioner pleaded nolo in Superior Court to an indictment charging him with breaking and entering, and on February 28, 1969, sentence was de-

ferred pursuant to G. L. 1956 (1969 Reenactment) §12-19-19.[1]

Thereafter, on March 3, 1970, petitioner was arraigned in the District Court, Fifth Division, on a charge of breaking and entering the "Moose Home" in Pawtucket. Following this, he was presented to the Superior Court on April 1, 1970, as being in violation of said deferred sentence agreement. Held without bail, pending receipt by Superior Court of a pre-sentence report, he was again presented on April 21, 1970, and, after a hearing, was found to be in violation of his deferred sentence agreement. A sentence of three years was imposed and petitioner was delivered to respondent for the purpose of serving said sentence.

The pleadings further established that on June 17, 1970, the charge of breaking and entering brought by the Pawtucket police in the District Court, Fifth Division, was dismissed on petitioner's motion after trial.

Thereafter, specifically on October 20, 1970, petitioner filed for a writ of error coram nobis in Superior Court which

---

[1]"Sentencing on plea of guilty or nolo contendere—Deferment of sentence.—Whenever any prisoner shall be arraigned before the superior court, and shall plead guilty, or refuse to contend with the state, he may be at any time sentenced by the court; provided, that if at any time the court formally defers sentencing the defendant, and thereupon a written agreement concerning said deferring of sentence is entered into between the attorney-general and the prisoner, and filed with the clerk of said court, thereafter the court may only impose sentence within five (5) years from and after the date of said written agreement, unless during said period, such prisoner shall be sentenced to imprisonment in this or in any other state, in which event the court may impose sentence at any time within five (5) years from and after the termination of such sentence of imprisonment, or unless at the time such sentence is formally deferred such prisoner shall be serving a term of imprisonment under sentence previously imposed in another case, in which event the court may impose sentence at any time within five (5) years from and after the date on which such prisoner is released from prison either on parole or at the termination of such sentence of imprisonment, whichever first occurs."

was heard on October 27, 1970, and denied. On November 5, 1970, the same Superior Court justice heard and denied petitioner's oral motion for reargument.[2]

On this state of the pleadings, we ordered the writ to issue and consolidated the cause with that of *Charest* v. *Howard* for oral arguments in this court. *State* v. *Plante*, 108 R. I. 910, 273 A.2d 327 (1971).

Before turning to a consideration of the several contentions advanced by petitioner in his oral argument and brief, a more detailed statement of the circumstances which brought about the breaking and entering charge by the Pawtucket police will be helpful.

At the hearing of April 21, 1970, when petitioner was found to have violated the terms of his deferred sentence agreement, certain testimony was adduced by the state.[3] A transcript of the proceedings, including this testimony, was made a part of the record before us by petitioner in support of his petition. *See Charest* v. *Howard*, 109 R. I. 360, 285 A.2d 381 (1972).

---

[2]Only under unusual circumstances is error coram nobis an appropriate remedy for review in the Superior Court of a revocation hearing. That writ is directed, after judgment, to the trial justice when the petitioner therefor is alleging the existence of a fact of which he did not have, or by reasonable diligence could not have had knowledge at the time of trial, but which, if known, would have prevented the judgment. *Andrews* v. *Langlois*, 96 R. I. 461, 194 A.2d 674 (1963). To avoid further recourse to this writ or the writ of habeas corpus for review in the Superior Court of revocation hearings, whether such hearings are in connection with suspended sentences or violation of deferred sentence agreements, we have this day concluded that as to all such hearings held subsequent to the filing of this opinion, review will be in this court by way of a bill of exceptions. *See Charest* v. *Howard*, 109 R. I. 360, 285 A.2d 381 (1972).

Parenthetically, it should be noted that in the case at bar, an exception was taken to the decision of the court, but that no bill of exceptions was prosecuted.

[3]The petitioner was represented by counsel and, after conference with the latter, opted to offer no testimony.

It appears therefrom that at about 2:30 on the morning of March 3, 1970, Pawtucket police officer, Joseph O'Donnell, cruising in a police car, observed petitioner on foot near the corner of Middle and Japonica Streets. When petitioner became aware of headlights, he glanced back and proceeded to turn the corner of Japonica Street.

Officer O'Donnell followed in the car and stopped petitioner for interrogation. When petitioner refused to answer, the officer told him he would have to go to the station for questioning. At this point, petitioner broke and ran. As he did, Officer O'Donnell thought he heard something drop into the gutter beside the car.

The officer immediately called for assistance by radio and then left the car to chase petitioner on foot. He fired a warning shot and ordered petitioner to stop, but he did not. After a pursuit of about 100 yards, Officer O'Donnell caught petitioner and a scuffle ensued.

Although in custody, petitioner continued to resist. At this point, Officer O'Donnell frisked petitioner for weapons and felt a large bulge in his right pants pocket. Further investigating, he discovered some $20 in quarters, dimes and nickels. It was then that Officer Eugene Champagne arrived and he called for a police wagon. On its arrival petitioner was taken to the station.

Officer Champagne then went to the spot where the foot chase had begun, and found over $50 in quarters, dimes and nickels in an orange sock laying in the gutter.

At the station petitioner continued to resist police interrogation, even to the point of refusing to give his address. Some time later that day, however, he stated that he obtained the coins from his sister's bank at her home. She was questioned and contradicted petitioner's claim.

Later that morning, the Moose Home, about a block and a half away from the location where petitioner had been

apprehended, reported that someone had entered the premises during the night, had broken into an amusement device taking all of the coins contained therein.

It was in light of petitioner's conduct as thus portrayed that he was presented in the Superior Court as a deferred sentence violator and so found.

From the pleadings, transcripts and briefs three issues are presented in connection with petitioner's contention that the mittimus by which he is in respondent's custody issued illegally.

The first such issue involves the constitutionality of §12-19-18,[4] (1969 Reenactment) and the application of that section to the facts in the instant case. In *State* v. *Garnetto*, 75 R. I. 86, 63 A.2d 777 (1949) this court held the cited section to be constitutionally defective as a legislative infringement on the judicial power.

However, Garnetto entered into a deferred sentence agreement in 1942, and was held to be in violation thereof in 1946. The statute in question was not adopted until 1948. Consequently, petitioner contends that while the statute may be constitutionally tainted when considered in connection with deferred sentence agreements entered into prior to its enactment, the provisions of the statute are incorporated into deferred sentence agreements entered into subsequent to its enactment. This is so, he argues, because the deferring of sentence for five years being leg-

---

[4]"Termination of imprisonment on deferred sentence on failure of grand jury to indict.—Whenever any person shall have been sentenced to imprisonment for violation of a deferred sentence by reason of the alleged commission of a felony, and the grand jury shall have failed to return any indictment on the charge which was specifically alleged to have constituted the violation of said deferred sentence, the sentence to imprisonment for the alleged violation of the deferred sentence shall, on motion made to the court on behalf of the person so sentenced, be quashed and imprisonment thereunder shall be terminated forthwith and the deferred sentence shall have same force and effect as if no sentence to imprisonment had been imposed thereunder."

islative in origin, see *State* v. *Robalewski,* 96 R. I. 296, 191 A.2d 148 (1963), the General Assembly has the power to liberalize the provisions of the statute, at least prospectively.

Whether there is merit to the contention that said §12-19-18 is constitutional as to deferred sentence agreements entered into subsequent to the enactment of that statute, we do not inquire, for the very good reason that this is not a proper case for such inquiry.

Assuming that deferred sentence agreements entered into subsequent to the enactment of §12-19-18 incorporate the provisions of that act, three conditions must be satisfied before the statute has application. These are that the accused was charged with a specific felony, which charge was referred to the grand jury; that the grand jury failed to indict; and, that the presenting of the accused as being in violation of his deferred sentence agreement was predicated exclusively on the ground that he had committed the specific offense for which the grand jury failed to indict.

The two conditions relative to the grand jury are not present. Neither, contrary to petitioner's assertions, was he presented as being in violation of his deferred sentence agreement solely on the grounds that he allegedly broke and entered the Moose Home in Pawtucket.

The second issue is that which largely moved us to issue the writ. *See Charest* v. *Howard, supra.* It is that something more is required to find a probationer in violation of his deferred sentence agreement than that which will suffice to find violation of a suspended sentence.

We perceive no logical reason to support such a distinction. In both cases the guilt of the convicted accused has been established, but, as an act of grace, one is given a sentence, the execution of which is suspended, while in the case of the other, the imposition of sentence is formally

deferred. Both, however, are placed on probation and retention of their liberty depends on good behavior during the period of probation.[5]

Finally, there is the question of whether the Superior Court justice acted arbitrarily or capriciously in finding that petitioner was in violation of the terms of his deferred sentence agreement. If he did not, the imposition of sentence for the offense on which sentence had previously been deferred cannot be faulted, and petitioner's present restraint by respondent is lawful. *Broccoli* v. *Kindelan*, 80 R. I. 436, 439, 98 A.2d 67, 69 (1952).

There, this court pointed out that one of the conditions of a deferred sentence agreement to which a defendant is a party is his continued good behavior during the five-year period that such agreement is in effect.

The question before the Superior Court justice in the case at bar then was whether petitioner's conduct, as testified to by Officers O'Donnell and Champagne in the presence of petitioner and his attorney, amounted to a violation of petitioner's good behavior promise.

We have heretofore paraphrased the testimony of the two officers at some length. Nothing more than a reading thereof is required to conclude that the action of the Superior Court justice was not arbitrary and that the petitioner's contention that he is being unlawfully detained is wholly

---

[5]There is, of course, a jurisdictional distinction as to the period of time for which probation may be imposed. In the case of a suspended sentence, the period of probation may be for a longer or shorter time than the sentence imposed, but not greater than the authorized maximum sentence. General Laws 1956 (1969 Reenactment) §12-19-8.

In the case where impositions of sentences are formally deferred, the period of probation is for five years without regard to the imposable sentence. General Laws 1956 (1969 Reenactment) §12-19-19.

This distinction, however, is without materiality on the issue raised by petitioner.

lacking in merit. *Walker* v. *Langlois,* 104 R. I. 274, 243 A.2d 733 (1968).

The petition for habeas corpus is denied and dismissed, and the writ heretofore issued is quashed.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff-respondent.

*James Cardono,* Public Defender, *Moses Kando,* Asst. Public Defender, for defendant-petitioner.