July 1, 2024

**Supreme Court**

No. 2023-43-C.A.
(P2/18-3891A)

State                    :

   v.                    :

Lydia Alicea.            :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email:    opinionanalyst@courts.ri.gov,    of    any typographical  or  other  formal  errors  in  order  that corrections may be made before the opinion is published.

State                              :

v.                              :

Lydia Alicea.                    :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Justice Goldberg, for the Court.**  This case came before the Supreme Court on February 28, 2024, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The defendant, Lydia Alicea (defendant or Alicea), appeals from a Superior Court judgment declaring her to be in violation of her deferred-sentence agreement.  After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we will proceed to decide the case at this time.  For the reasons stated herein, we vacate the judgment of the Superior Court and remand for further proceedings consistent with this opinion.

**Facts and Travel**

On or about January 29, 2019, Alicea was charged by way of criminal information with violating G.L. 1956 § 11-41-4, which occurred between February 18, 2017, and August 1, 2017.[1] On June 19, 2020, defendant appeared before the Superior Court and entered a plea of nolo contendere; the court imposed a two-year deferred sentence and ordered $1,800 in restitution. The defendant entered into the deferred-sentence agreement with the Office of the Attorney General, thereby agreeing to the terms of her sentence as set forth by the court, including the payment of restitution. Judgment entered on July 22, 2020.

The defendant failed to pay the court-ordered restitution in accordance with the agreement. It was not until almost two years had elapsed that the state filed a notice of violation pursuant to Rule 32(f) of the Superior Court Rules of Criminal Procedure and defendant appeared before a Superior Court magistrate on May 31, 2022. During that appearance, the magistrate inquired whether defendant had the ability to pay the outstanding balance before the expiration of her sentence. The defendant represented that she could satisfy the outstanding amount before the deferred-sentence agreement expired, because she recently had become employed.

---

[1] See G.L. 1956 § 11-41-4, Obtaining property by false pretenses or personation, a larceny offense.

The court continued the matter to June 9, 2022, in order for defendant to make payment.[2]

The defendant next appeared before the magistrate on June 9, 2022, and advised the court that she had failed to make any payments towards her outstanding balance, but that she would make a partial payment that day. The court referred her to the Public Defender's Office and scheduled a violation hearing—with witnesses—for June 15, 2022, based on defendant's failure to comply with the restitution obligation of her deferred-sentence agreement.

At that hearing, both defendant and the state stipulated to the deferred-sentence agreement and, after accounting for the $516.25 that Alicea paid on June 9, 2022, the remaining balance was $1,300. That same morning, on June 15, 2022, Alicea submitted a hand-written financial statement in support of her argument that she was unable to pay restitution. The court "found that [defendant] has not paid the restitution[,]" and she, therefore, was in violation of the deferred-sentence agreement. The court noted that the next step after a finding of violation was sentencing but recognized that there were procedural challenges moving forward because of the nature of a deferred sentence. Upon finding

---

[2] At the May 31, 2022 hearing, the record indicated Alicea had an outstanding balance of $1,800 in restitution, having failed to make any payments for almost two years.

defendant in violation of the agreement, the court observed that "[t]he 32(f) [has been] met. It's not really a violation of probation. It's the violation of a deferred sentence. So the [d]eferred [s]entence [a]greement has basically become null and void due to the fact that [defendant] was not able to pay. * * * We now have to go back to actually sentencing her." Based on the court's finding that "[t]he fair preponderance of the evidence is that the deferred [sentence] agreement was not met," the court then turned to Alicea's ability to pay before imposing sentence. The case was continued to the following day. The magistrate determined that the financial statement "in and of itself" was not enough to establish an inability to pay and allowed defendant to reserve the right to request a hearing relative to that issue. However, the court proceeded to impose a sentence of three years of probation and ordered defendant to pay $36.15 in monthly installments toward the outstanding restitution amount.

The defendant filed a timely notice of appeal of the magistrate's decision to a justice of the Superior Court; the case was assigned to the trial justice. On September 20, 2022, the trial justice granted defendant's motion to stay the restitution payments while the case was pending. The defendant's appeal was heard on November 17, 2022. On November 18, 2022, the trial justice issued a written decision denying the appeal; the stay was vacated, and restitution payments were set to resume on December 1, 2022. This appeal ensued.

- 4 -

**Standard of Review**

To establish a deferred-sentence violation, the state must demonstrate "by a fair preponderance of the evidence that the defendant breached a condition of the defendant's probation or deferred sentence * * *." Super. R. Crim. P. 32(f). "This Court will reverse a probation-violation finding only if the hearing justice acted arbitrarily or capriciously." *State v. Regan*, 273 A.3d 116, 119 (R.I. 2022) (quoting *State v. LaRoche*, 883 A.2d 1151, 1154 (R.I. 2005)).

**Analysis**

On appeal, defendant argues that the trial justice erred in affirming the magistrate's decision—declaring defendant a violator of the deferred-sentence agreement—because the court did not conduct an adequate hearing concerning whether she had the ability to pay the restitution in accordance with G.L. 1956 § 12-19-19.[3] The defendant also submits that the trial justice improperly applied

---

[3] General Laws 1956 § 12-19-19 states:

> "(a) Whenever any person is arraigned before the superior court and pleads guilty or nolo contendere, he or she may be at any time sentenced by the court; provided, that if at any time the court formally defers sentencing, then the person and the court shall enter into a written deferral agreement to be filed with the clerk of the court. When a court formally defers sentence, the court may only impose sentence up to five (5) years from and after the date of the written deferral agreement, unless during the required period, the person shall be declared to have violated the terms and conditions of the deferment pursuant to

our holding in the recent case of *State v. Regan*, 273 A.3d 116 (R.I. 2022), because, defendant broadly asserts, "the plain language of the law and the deferred-agreement itself state unequivocally that determinations of violations are handled in the same manner [as probation violations]." *See* § 12-19-19.

---

subsection (b) in which event the court may impose sentence.

"(b) The court may require that the person agreeing to said deferment of sentence shall not violate any condition of the written deferral agreement. A violation of any condition set forth by the written deferral agreement shall violate the terms and conditions of the deferment of sentence and the court may impose a sanction or impose sentence. The determination of whether a violation has occurred shall be made by the court in accordance with procedures relating to violation of probation in court rules and §§ 12-19-2 and 12-19-14.

"(c) If a person, after the completion of the deferment period is determined by the court after a hearing to have complied with all of the terms and conditions of the deferral agreement including, but not limited to, the payment in full of any court-ordered fines, fees, costs, assessments, and restitution to victims of crime, then the person shall become immediately eligible for consideration for expungement pursuant to the provisions of §§ 12-1.3-2 and 12-1.3-3."

We pause to note that in 2017, the General Assembly amended § 12-19-19, thereby removing "attorney general" as the second party to the deferred-sentence agreement and inserted "court" as the other party entering into the deferred-sentence agreement. *See* P.L. 2017, ch. 345, § 1; P.L. 2017, ch. 351, § 1. As discussed herein, the deferred-sentence agreement Alicea signed included the "attorney general" as a signatory to the agreement and required the attorney general's consent.

This contention is correct only to the extent that § 12-19-19(b) provides that "[t]he determination of whether a violation has *occurred* shall be made by the court in accordance with *procedures* relating to violation of probation in court rules and §§ 12-19-2 and 12-19-14." Section 12-19-19(b) (emphases added). In the case of a deferred sentence, the agreement remains open, pending compliance with its terms. Thus, for the reasons stated herein, we are of the opinion that, when a trial justice imposes restitution as part of a deferred sentence, a defendant's ability to pay shall be determined *before* the plea is accepted.

**Characteristics of Deferred Sentences**

This Court has recognized that "the deferred sentence statute [is] remedial in nature, one that confers a benefit upon the accused and places within his control the opportunity for rehabilitation." *State v. Briggs*, 934 A.2d 811, 817 (R.I. 2007). This is an "act of grace." *State v. Plante*, 109 R.I. 371, 377, 285 A.2d 395, 398 (1972). Although we have observed that there are certain instances in which deferred sentences and probation are to be treated similarly,[4] we have explicitly declared that the two are "distinct," *Briggs*, 934 A.2d at 817, in that a "[deferred sentence] is not

---

[4] This Court observed "that deferred sentences should be treated like probationary dispositions in the expungement context. We have characterized a *nolo contendere* plea followed by probation as a conviction for purposes of expungement." *State v. Briggs*, 934 A.2d 811, 817 (R.I. 2007).

to be confused with a substantive right, or with a sentence, or with a suspended sentence." *State v. Carmello*, 83 R.I. 303, 309, 116 A.2d 464, 467 (1955).

In the case at bar, the trial justice determined that a deferred sentence is substantively different, and, therefore, *Regan* was not on all fours with the issues presented in this appeal. We agree. It is clear that a deferred sentence and a suspended sentence with probation share some of the same procedural mechanisms designed to hold a defendant accountable in the event of a violation. The procedural path is the same.

Rule 32(f) of the Superior Court Rules of Criminal Procedure provides that:

> "The court shall not revoke *probation* or revoke a *suspension of sentence* or *impose a sentence previously deferred* except after a hearing at which the defendant shall be afforded the opportunity to be present and apprised of the grounds on which such action is proposed. The defendant may be admitted to bail pending such hearing. Prior to the hearing the State shall furnish the defendant and the court with a written statement specifying the grounds upon which action is sought under this subdivision. No revocation shall occur unless the State establishes by a fair preponderance of the evidence that the defendant breached a condition of the defendant's probation or deferred sentence or failed to keep the peace or remain on good behavior." (Emphases added.)

However, "[a] suspended sentence is one *actually* imposed but the execution thereof is thereafter suspended. A so-called deferred sentence is *never* imposed unless the defendant violates his written agreement with the attorney general." *State v. Robalewski*, 96 R.I. 296, 300, 191 A.2d 148, 151 (1963) (emphases added).

Therefore, "[t]he two are not the same." *Id.* We also have observed that a suspended sentence, in the context of § 12-19-8, is not synonymous with and does not apply to a deferred sentence.[5] *Id.* While Rule 32(f) serves as the procedural mechanism to hold violators accountable, including those who violate a deferred sentence, our application of *Regan* to the case at bar reveals the substantive distinction between them.

### Ability to Pay

Although our caselaw gives clear guidance in the context of probation violations for suspended sentences, we are called upon to address the issue of nonpayment of restitution in the context of a deferred-sentence agreement.

As discussed, a deferred sentence remains open and is never imposed by the court unless there is a finding that the defendant breached the terms of the agreement or until it is successfully completed. *See Robalewski*, 96 R.I. at 300, 191 A.2d at 151. A failure to pay the agreed-upon restitution constitutes a breach of the agreement, but generally does not rise to the level of a "fail[ure] to keep the peace or remain on good behavior." Super. R. Crim. P. 32(f).

The United States Supreme Court in *Bearden v. Georgia*, 461 U.S. 660 (1983), and this Court in *State v. LaRoche*, 883 A.2d 1151 (R.I. 2005), recognized

---

[5] See § 12-19-8, Suspension of sentence and probation by superior or district court.

the dichotomy between a defendant's failure to pay restitution when he or she has the means to pay and the defendant refuses to do so; or when a defendant who does not have the financial ability does not make payment. *Bearden*, 461 U.S. at 662; *LaRoche*, 883 A.2d at 1154; *see also Regan*, 273 A.3d at 119.

In *Bearden*, the petitioner was indicted for felonies consisting of burglary and theft by receiving stolen property. *Bearden*, 461 U.S. at 662. After the petitioner entered a plea of guilty, "the trial court did not enter a judgment of guilt, but deferred further proceedings and sentenced petitioner to three years on probation for the burglary charge and a concurrent one year on probation for the theft charge." *Id.* Additionally, as part of the petitioner's probation, he was required to pay a $500 fine and $250 in restitution. *Id.* However, the *Bearden* Court observed that the petitioner had no income or assets during the period in which he was scheduled to make such payments, and shortly before the $500 fine and $250 in restitution became due, petitioner notified the probation office that the payment would be late. *Id.* at 662-63. The record also revealed that the petitioner had recently been laid off from his job, had only a ninth-grade education, and could not read. *Id.* at 662. Several months after the petitioner notified the probation office of his inability to pay, the state petitioned the trial court to revoke probation. *Id.* at 663. "After an evidentiary hearing, the trial court revoked probation for [the petitioner's] failure to pay the balance of the fine and restitution, entered a conviction, and sentenced

- 10 -

petitioner to serve the remaining portion of the probationary period in prison." *Id.* (footnotes omitted).

The Supreme Court reversed the lower court judgment and observed that "[i]f the probationer has *willfully* refused to pay * * * restitution when he has the means to pay, the [s]tate is perfectly justified in using imprisonment as a sanction to enforce collection." *Bearden*, 461 U.S. at 668 (emphasis added). However, "if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available." *Id.* at 668-69 (footnote omitted). What is clear is that a defendant's poverty does not necessarily immunize him or her from punishment. *Id.* at 669. The *Bearden* Court noted that "when determining initially whether the [s]tate's penological interests require imposition of a term of imprisonment, the sentencing court can consider the entire background of the defendant, including * * * employment history, and financial resources." *Id.* at 669-70. The difficulty arises in determining whether the defendant has "made all reasonable efforts" to pay the amount of restitution in the agreement. *Id.* at 668; *see, e.g.*, *LaRoche*, 883 A.2d at 1155.

Moreover, the Supreme Court in *Bearden* emphasized that when payment has not been made, it is important to "evaluat[e] the entire background of the defendant

- 11 -

in order to tailor an appropriate sentence * * *." *Bearden*, 461 U.S. at 671. "By sentencing petitioner to imprisonment simply because he could not pay the fine, without considering the reasons for the inability to pay * * * the [lower] court automatically turned a fine into a prison sentence." *Id.* at 674. The Court held that, "[o]nly if alternative measures are not adequate to meet the [s]tate's interests in punishment and deterrence may the court imprison a [defendant] who has made sufficient bona fide efforts to pay. To do otherwise would deprive the [defendant] of his [or her] conditional freedom because, through no fault of [the defendant's] own, he [or she] cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." *Id.* at 672-73.

We contrast the holding in *Bearden* with *LaRoche*, in which this Court was presented with a defendant's deliberate avoidance of restitution in the face of ample evidence that his expenditures "[were] not consistent with his claim that he made a good faith effort to pay his restitution." *LaRoche*, 883 A.2d at 1156; *see also Bearden*, 461 U.S. at 672-73. This Court concluded that the defendant's actions "demonstrate[d] a cavalier, if not reckless, disregard for the obligation to which [defendant] had agreed and which was ordered by the court as a condition of probation."[6] *LaRoche*, 883 A.2d at 1156.

---

[6] On appeal, the defendant in *State v. LaRoche*, 883 A.2d 1151 (R.I. 2005), contended that the evidence did not support the trial justice's finding that he failed to make "reasonable bona fide efforts to fulfill his restitution obligation." *LaRoche*,

The record demonstrated that LaRoche failed to disclose under oath "an accurate accounting of his monetary holdings," and "placed assets in the names of his children, his attorneys, and other individuals." *LaRoche*, 883 A.2d at 1156. The hearing justice also observed LaRoche's untruthful and evasive testimony, and, therefore, found him not credible. *Id.* This Court concluded that his conduct "reasonably [gave] rise to an inference of intent to conceal." *Id.* Accordingly, the hearing justice declared LaRoche to be a violator of the terms of his probation by failing to pay $100,000 restitution, and he was sentenced to serve four years of his five-year suspended sentence. *Id.* at 1154. This Court affirmed. *Id.* at 1157.

In the case before us, unlike *Bearden* and *LaRoche*, we are presented with a defendant who violated the terms of her deferred-sentence agreement—as opposed to violating a condition of probation—and, unfortunately, scant evidence for the magistrate to consider prior to imposing probation for the failure to comply. We are mindful that a deferred sentence, which is not a final judgment, is rather "an act of grace," *Plante*, 285 A.2d at 398, and a useful vehicle in criminal dispositions, particularly for first time offenders who can thereby avoid a felony conviction. *See*

---

883 A.2d at 1155. He was mistaken. The record contained an overwhelming amount of evidence that LaRoche had sufficient funds to pay restitution, but instead elected to make several discretionary purchases, including: a $6,000 diamond engagement ring; a $5,000 investment in a vehicle; a vacation in Europe; and airline tickets. *Id.* at 1156.

*Carmello*, 83 R.I. at 309, 116 A.2d at 467 ("The underlying principle of law governing a deferred sentence agreement" was first recognized in *Orabona v. Linscott*, 49 R.I. 443, 144 A. 52, 53 (1928).).[7]  In *Carmello*, we noted:

> "The provision authorizing the attorney general to enter into a deferred sentence agreement confers no right upon the defendant to demand such an agreement or a deferred sentence.  Nor does it compel the court to approve an agreement and grant a deferred sentence.  The *postponement of the case for sentence* by the court, upon execution by defendant of the conditional deferred sentence agreement, is a *mere privilege* accorded to him under the conditions therein set forth.  [A deferred sentence] is not to be confused with * * * a sentence, or with a suspended sentence." *Carmello*, 83 R.I. at 309, 116 A.2d at 467 (emphases added).

Based on our longstanding viewpoint that a deferred sentence is a mere privilege, we conclude that restitution obligations, in the context of a deferred-sentence agreement, are serious matters. *See Carmello*, 83 R.I. at 309, 116 A.2d at 467.  A defendant's failure to comply with a promise of restitution in a deferred sentence stands on different footing, based on the court's obligations in this context.  For example, a disposition in which a sentence has been deferred

---

[7] Although *Orabona v. Linscott*, 49 R.I. 443, 144 A. 52 (1928), has been superseded by statute and subsequent caselaw regarding the temporal aspects of a deferred sentence; we note that *Orabona* stands for the proposition that it has been our state's longstanding practice that deferred-sentence agreements are made between the defendant, and the attorney general, and filed with the clerk of the court. *See Orabona*, 49 R.I. at 446, 144 A. at 53; *see also Giroux v. Superior Court*, 86 R.I. 48, 50-51, 133 A.2d 636, 638 (1957).

- 14 -

cannot be expunged unless the defendant has paid restitution. *See* § 12-19-19(c) ("If a person, *after the completion* of the deferment period[,] is determined by the court after a hearing to have *complied with all of the terms and conditions* of the deferral agreement *including, but not limited to, the payment in full of any * * * restitution * * ** then the person shall become immediately *eligible* for consideration for expungement * * *.") (emphases added).

Recently, this Court addressed the precise issue concerning a defendant's inability to pay; but we did so only in the context of a suspended sentence and probation. *See Regan*, 273 A.3d at 118. Because the issue of nonpayment is the central issue in this appeal, we look to *Regan* for guidance. In *Regan*, the defendant entered a plea of nolo contendere to violating § 11-41-11.1, "unlawful appropriation in an amount greater than $1,000," a larceny crime. *Id.* As part of his sentence, Regan was ordered to pay a whopping $520,295.46 in restitution, an "insurmountable amount."[8] *Id.* at 118, 120. Regan's failure to pay the full amount of his restitution by the expiration of his sentence led the state to file a notice of violation in accordance with Rule 32(f). *Id.* at 118. The Superior Court held a violation hearing and declared Regan to be a violator because he would be unable

---

[8] Regan was sentenced to ten years at the Adult Correctional Institutions, with one year to serve at the ACI, one year to serve on home confinement, and eight years suspended, with probation and 250 hours of community service. *State v. Regan*, 273 A.3d 116, 118 (R.I. 2022).

- 15 -

to pay the remaining $488,000 balance—at $200 a month—*before* his sentence expired. *Id.* at 118, 120. The court declared that the violation would remain pending until the restitution was satisfied. *Id.* at 118.

On appeal, this Court concluded that the trial justice neglected to consider whether Regan's failure to pay restitution was "willful, deliberate, or in defiance of his obligations." *Regan*, 273 A.3d at 120. We held, therefore, that the decision was arbitrary and capricious, and we vacated the order of the Superior Court. *Id.* at 120, 121. This Court declared that:

> "Imposition of a restitution order in such an insurmountable amount in the absence of a hearing on the [defendant's] ability to pay ought to be avoided. The court should proceed with caution before entering orders proposed by the state that seek unrealistic restitution amounts as part of a criminal sentence. * * * In the absence of a finding concerning Regan's ability to pay this amount, it is irrational to conclude that Regan would face a lengthy period of incarceration simply because he could not satisfy $520,295.46 in monthly payments of $200. Simply put, there were not enough months in his sentence to accomplish this goal." *Id.* at 120.

Although a condition of probation may include payment of restitution ordered by the court, in order to "constitute a probation violation with consequences for a breach of this condition [(i.e. nonpayment of restitution)], the court must determine a defendant's ability and [his or her] efforts to pay restitution—that is, 'the reasons for the noncompliance.'" *Regan*, 273 A.3d at 119 (quoting *LaRoche*, 883 A.2d at 1154).

- 16 -

Before this Court, the state contends that defendant's failure to satisfy her restitution obligation is not analogous to the facts presented in *Regan*. The state distinguishes the fact that, although Regan failed to satisfy his restitution obligation before the probation term expired, he was nonetheless compliant by making consistent monthly payments. *See Regan*, 273 A.3d at 118. Here, the state contends that because Alicea failed to make *any* payment towards her restitution obligation— and made only a single payment of $516.25 on June 9, 2022—this factor distinguishes our holding in *Regan* from the case at bar. *See id.* Although it is accurate that "[t]here was no dispute that Regan ha[d] been in full compliance with the payment plan[,]" the state, notably, contended in *Regan*, that a notation in the docket "mandated Regan to *pay restitution in full* by December 15, 2018." *Id.* (emphasis added). We reject the state's argument.

In *Regan*, the issue was "whether the trial justice had the authority to keep a prison sentence hanging over Regan's head beyond the time when his sentence and probationary term had expired." *Regan*, 273 A.3d at 119 (internal quotation marks and brackets omitted). We concluded that the trial justice in *Regan* had no such authority. *Id.* at 121. Our observations in *Regan* were made in the context of a judgment of conviction that was entered with probation as *part of* the defendant's sentence. *Id.* at 118. In the case at bar, the trial justice concluded that in certain respects, *Regan* was inapplicable to the case before him. The trial justice found that

- 17 -

*Regan* did not apply because Alicea was not on probation; indeed she had not yet been sentenced. The trial justice correctly found that "there was no sentence for the [m]agistrate to keep 'hanging over Alicea's head' for nonpayment of restitution." (Brackets omitted.) Rather, the probation was imposed *after* the magistrate determined that Alicea was in breach of the agreement by failing to satisfy the outstanding restitution before the expiration of the deferred sentence and that defendant did not establish an inability to pay.

According to the record before us, defendant, the court, and the state entered this deferred-sentence agreement consensually. We are of the opinion that the agreement is contractual in nature and does not preclude the parties from re-negotiating an extension up to the statutory limit of five years, as set forth in § 12-19-19(a), for an extended period of grace.[9]

We also note the court's interaction with a defendant does not end when the sentence is deferred. In fact, in this case, the agreement provided that Alicea was scheduled to appear before the Superior Court on November 13, 2020—approximately five months after the disposition.[10] However, defendant's

---

[9] Although the court ordered a two-year deferred sentence, § 12-19-19(a) permits the court to impose a deferred sentence up to "five (5) years from and after the date of the written deferral agreement, unless during the required period, the person shall be declared to have violated the terms and conditions * * * in which the court may impose sentence." Section 12-19-19(a).

[10] This did not occur.

- 18 -

interaction with the Superior Court was minimal. The record provides no explanation as to why Alicea's nonpayment was not monitored more frequently. Specifically, from the time Alicea entered into the deferred-sentence agreement with the state and the court on June 19, 2020, she did not appear again before the Superior Court until she was presented as a violator pursuant to the state's Rule 32(f) notice of violation on May 31, 2022, and she paid no restitution whatsoever for two years. While unfortunate, this is also a mitigating factor in evaluating the reason she did not comply.

The defendant appeared on June 9, 2022, for a violation hearing; and the matter was continued to June 15, 2022—days before the deferred-sentence agreement was set to expire. There was no evidentiary hearing. The only evidence presented was defendant's representation that she became unemployed sometime after the plea. Although Alicea provided the court with a financial statement, it is clear from the record that the magistrate did not find the document sufficient to demonstrate her inability to pay $36.15 per month. In fact, defendant submitted the financial statement on the morning of the June 15th hearing, which the magistrate evaluated and found to have been "submitted haphazardly" and, thus, she "let the defendant reserve the right to have a full ability to pay hearing * * *." No hearing was requested or scheduled. Despite the magistrate's conclusion that the financial statement was an insufficient basis for a finding of an inability to pay, the court

imposed a three-year probationary term without a finding that defendant "made all reasonable efforts" to satisfy her restitution obligation, and yet could not do so "through no fault of [her] own * * *." *Bearden*, 461 U.S. at 668 (footnote omitted).

On appeal, the trial justice found that the only question before the magistrate was whether the conditions of the deferred-sentence agreement were violated by Alicea's nonpayment of restitution and, if so, whether the magistrate could impose sentence, "for the first time." He declared that because "both *Bearden* and *Regan* specifically address the issue of violations of probation based on failure to pay fines or restitution, and do not address violations of deferred sentences[,] * * * the [m]agistrate was not required to make a finding of willfulness as to [defendant's] deferred sentence violation." (Emphasis omitted); *see Bearden*, 461 U.S. at 662; *see also Regan*, 273 A.3d at 118.

It is undisputed that Alicea breached the deferred-sentence agreement by failing to satisfy the restitution condition before the agreement expired. However, we are of the opinion that defendant is nonetheless entitled to an evidentiary hearing to determine her ability to pay *before* a sentence—including probation—may be imposed. In *LaRoche* and *Regan*, this Court set forth the circumstances a trial justice must consider when evaluating a defendant's ability to pay in the context of a probation violation. *See LaRoche*, 883 A.2d at 1155-56; *see also Regan*, 273 A.3d at 119-20. The court may consider evidence, such as bank records, credit-card

- 20 -

statements, W2-Forms, DR-6 Financial Statements, tax returns, and testimony so that the trial justice can make a finding, by a fair preponderance of the evidence, whether defendant had the ability to pay and, if not, whether the failure to do so was deliberate.[11]  These same procedures apply to violations of deferred-sentence agreements. *See* § 12-19-19; Super. R. Crim. P. 32(f).

In the case before us, the magistrate noted "that [defendant] would have a longer time to pay that restitution at $36.15 a month" over three years; the question remains, however: Did defendant have the ability to pay, such that the violation was willful?  If there was no deliberate or willful violation of the deferred-sentence agreement, yet defendant failed to comply with the restitution required, the question of a remedy in the context of a deferred-sentence agreement becomes the focal point. In *Bearden*, the Supreme Court observed that if a defendant "has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own," a court should consider "whether adequate alternative methods of punishing the defendant are available." *Bearden*, 461 U.S. at 668-69.  Adequate alternative means, in the context of a deferred sentence, do not amount to a punitive sanction. Rather, for example, these means can range from extending the deferred sentence to the five-year statutory limit, amending the agreement to eliminate restitution where

---

[11] "No revocation shall occur unless the State establishes by a fair preponderance of the evidence that the defendant breached a condition of the * * * deferred sentence or failed to keep the peace or remain on good behavior." Super. R. Crim. P. 32(f).

there is no ability to pay, or imposing probation to afford the defendant an opportunity to comply.

We appreciate the trial justice's correct distinction between probation and a deferred sentence. Because of this distinction, we deem it of even greater importance that the court should proceed with caution prior to imposing restitution as a condition of a deferred sentence. Restitution should be at the front of the court's consideration before it accepts a defendant's plea; it should not be imposed until the court has had an opportunity to evaluate the amount requested by the state and the defendant's ability to pay. We note that defendant's restitution amount here was minimal, but nonetheless she is entitled to an evidentiary hearing regarding her ability to pay during the two-year deferred sentence.

It cannot be said that it is rational to approach a plea without exploring the probability and likelihood that an individual, who is living in poverty, with limited employment opportunities, has the financial ability to make restitution payments without first establishing an appropriate, and feasible, amount, in light of a defendant's circumstances.[12]

---

[12] Perhaps the most efficient and reliable way to avoid the issue of noncompliance with restitution obligations is that the restitution amount should be determined in advance and set forth as part of the information package. Adopting this approach would allow the courts to evaluate whether restitution is appropriate and set a reasonable amount of restitution that is achievable.

## Burden of Proof

Because we are remanding this case to the Superior Court for further factfinding, we provide guidance on the issue of the burden of proof that applies when determining a defendant's ability to pay in the context of a violation hearing under Rule 32(f).

This Court has stated, "[w]hen payment of money is made a condition of probation, and there is a claim of inability to pay, review must begin by considering the holding * * * in *Bearden* * * *." *LaRoche*, 883 A.2d at 1154. In *LaRoche*, the defendant contended that the hearing justice impermissibly shifted the burden to him to prove that he made sufficient bona fide efforts to pay restitution. *Id.* at 1154-55. We rejected that argument. *Id.* at 1155. In resolving that issue, this Court looked to "other jurisdictions * * * [that] applied the principles of *Bearden* to cases in which a [defendant] failed to pay restitution. * * * Those jurisdictions place the burden on the [defendant] to establish that he or she made sufficient bona fide efforts to obtain the funds necessary to pay." *Id.* This Court concluded that, upon inquiry into a defendant's reasons for failing to meet the condition, it is the defendant who must first "demonstrate sufficient bona fide efforts to repay his [or her] debt * * *." *Id.* (brackets omitted) (quoting *State v. Fowlie*, 636 A.2d 1037, 1039 (N.H. 1994)).

For example, as this Court noted in *LaRoche*, the Wyoming Supreme Court also adheres to *Bearden*'s allocation of the burden of proof—requiring that the state first establish that the probationer failed to pay restitution as required, and then the probationer "must establish any defense to revocation based on his alleged inability to pay."[13] *LaRoche*, 883 A.2d at 1155 (quoting *Dickson v. State*, 903 P.2d 1019, 1023 (Wyo. 1995)); *see also Silvestro v. Almonte*, 484 A.2d 900, 903 (R.I. 1984) ("In every instance the burden of proving indigence in relation to the payment of the required filing fee or other element of cost is upon the party seeking such relief."). This requires evidence and not a hastily prepared financial form.

We pause to note, however, that a defendant facing a violation for failure to pay restitution is not responsible for the failings of the court and the state in neglecting to timely notify the defendant to appear before the court. In the context of a deferred sentence, the court and the attorney general as parties to the agreement also have responsibilities to monitor compliance.

---

[13] We note that our caselaw has repeatedly placed the burden on a party alleging an inability to pay in other contexts. *See LaRoche*, 883 A.2d at 1155 ("This Court held that before a body execution may be issued against a defendant who is a judgment debtor, the defendant must be given a hearing to determine ability to pay.") (citing *Landrigan v. McElroy*, 457 A.2d 1056, 1062 (R.I. 1983)).

Here, the state filed its Rule 32(f) notice on May 27, 2022, less than a month before the deferred-sentence agreement was set to expire.[14] The defendant appeared before the Superior Court on May 31, 2022, and was presented as a violator. On June 9, 15, and 16, she again, appeared before the court regarding her failure to make the promised restitution payments. It was not until June 15, 2022, that defendant submitted a financial statement as evidence supporting her argument that she was currently unable to pay restitution.

After our careful review of the record, we conclude that the defendant was not afforded the opportunity for an evidentiary hearing relative to her ability to pay, to which she was entitled, and was represented by counsel. The defendant's sparse evidence—a "haphazard[]" financial statement—was submitted to the court, but failed to establish whether her failure to pay restitution was because of an inability to pay or willful and deliberate refusal to pay. Nonetheless, we cannot review whether the trial justice erred in affirming the magistrate's decision—finding Alicea in violation—because a hearing on an ability to pay did not occur.

---

[14] We are mindful that the two-year deferment period coincided with the COVID-19 pandemic.

## Conclusion

Accordingly, we vacate the judgment of the Superior Court declaring the defendant to be a violator of a deferred-sentence agreement and remand the case to the Superior Court for further proceedings consistent with this opinion.



## STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| Title of Case | State of Rhode Island v. Lydia Alicea. |
| --- | --- |
| Case Number | No. 2023-43-C.A.<br>(P2/18-3891A) |
| Date Opinion Filed | July 1, 2024 |
| Justices | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| Written By | Associate Justice Maureen McKenna Goldberg |
| Source of Appeal | Providence County Superior Court |
| Judicial Officer from Lower Court | Associate Justice Joseph A. Montalbano |
| Attorney(s) on Appeal | For State:<br><br>Danielle Marie Beauvais<br>Department of Attorney General |
| | For Defendant:<br><br>Megan F. Jackson<br>Rhode Island Public Defender |